# Richmond.

## KRAMER V. BLAIR.

### December 3rd, 1891.

1. AGENTS—*General—Special—Powers.*—General agents may do everything the principal may do. Special agents, constituted for a particular purpose, cannot bind the principal beyond their authority ; and persons dealing with special agent, deal at their peril.
2. REAL ESTATE AGENTS OR BROKERS—*Definition—Powers.*—Such agents or brokers may be defined, "those who negotiate the sale or purchase of real property "; but their power does not generally extend to executing the sale, but merely to bringing the parties together.
3. IDEM—*Case at bar.*—Real estate agents, by letter, asked owner for a chance to sell land for him, and for his terms. Owner answered, at one time : " My price is $9,000," and at another, " I have concluded to take $10,000, * * and will give you two per cent. Awaiting reply." Three days later those agents telegraphed owner: "Sold lots as per your letter." But owner had no where authorized them to sell, and disclaimed the sale;

HELD :

> Their authority did not extend to making the sale, but only to transmitting offers for owner's approval, and it was incumbent on purchaser to look to their authority.

Appeal from decree of hustings court of city of Roanoke, rendered May 11th, 1891, in the suit wherein William J. and L. Blair, Jr., were complainants, and F. C. Kramer was defendant. The court below decreed specific performance of the sale of certain lots to the complainants by the defendant through his alleged agents, and the defendant appealed. Opinion states the facts.

*Thomas W. Miller*, *Phlegar & Johnson* and *J. A. Watts*, for appellant.

*G. W. & L. C. Hansbrough* and *Penn & Cocke*, for appellees.

LACY, J., delivered the opinion of the court.

The bill was filed by the appellees to have specific performance of an alleged contract in writing for the sale of land against the appellant. The alleged contract set-up in the bill was claimed to have been made with certain agents or brokers, doing business in the name and style of Hanckel, Kemp & Co. The said agents or brokers admit the contract, and seek to sustain it as against their alleged principal (the appellant), and insist upon their authority to bind their principal. The alleged principal denies the authority to bind him as his agents, and repudiates the contract altogether, and refuses to do any act to ratify the same. The evidence on both sides was taken in the form of depositions, and upon the hearing the said court decreed specific performance against the said appellant. From this decree the case is here on appeal.

The questions arising for adjudication on this appeal are—first, whether any contract has been made binding upon the alleged principal (the appellant); and, in the second place, whether the contract, if so duly made, upon competent authority, should be specifically performed by the court. In the first place, therefore, we will consider how far the said real estate agents or brokers were clothed with authority to make a contract for the appellant, acting within the scope of their authority as his agents. "What authority had been conferred on the alleged agents by the appellant to make a complete sale of these lots?" is the first question argued by the learned counsel for the appellees. And it is said by the learned counsel for the appellant that "the first question that naturally arises in a case of this character is whether the alleged agents

VOL. LXXXVIII—58

had the authority to make the sale that it is charged was made."

We will first consider this question upon the facts in the record. The whole matter rests in writing and in telegrams, so far as the principal and the agent are concerned. The first letter which passed between them is as follows :

"ROANOKE, VA., September 19, 1888.

" *F. C. Kramer, Esq., Carlisle, Pa. :* ·

" Your son gave us your address, and said if we wrote you that we might get a chance to sell some of your property here. You have three lots, between market-house and city hotel, that we would like *to get your figures on and terms*—if cash, or part cash; also any other property you may give us.

"HANCKEL, KEMP & Co."

The answer to this was as follows :

" Yours of September 19th, 1888, to hand. My price is $9,000 cash, clear above commissions and expenses of any kind, for my three lots on Salem avenue, between Jefferson and Nelson streets.

" F. C. KRAMER."

And the next letter is :

" Yours to hand. I will sell lots on Salem avenue, running back to Campbell street, separately—$3,500 cash for Lot 89; $3,250 cash for Lot No. 90 ; $3,000 for Lot No. 91.

" F. C. KRAMER."

On September 26th, 1888, Hanckel, Kemp & Co. wrote as follows to Kramer :

" Your favor 1st to hand, and since wrote you, but have received no reply. We think if you would price these three lots at $10,000, one-third cash, balance one and two years, notes bearing interest at 6 per cent., one and two years, we can sell the lots, but find very much trouble in getting as much cash as you wish. Our commission on this would be $260. We would be glad if you would run down to our city, as I think it would be to your interest; also advise *if you would sell* one lot, giving price and terms."

On the next day Kramer wrote to Hanckel, Kemp & Co. :

" Your letter to hand. *I will take* for my lots on Salem ave. * * * $10,000, one-half cash," &c. " I have no objection to selling the lots separate."

On October 3rd he again wrote :

"*I have concluded to take* $10,000 for my lots on Salem avenue; one third cash, balance one and two years, six per cent., secured by deed of trust on the ground. Will give you two per cent. commission. Awaiting reply."

On October 6th Hanckel, Kemp & Co. wrote :

" We have just wired you that we closed sale of your Salem avenue lots, which we have done provided you will accept conditions which we think very liberal "—

setting out the new terms proposed, and telegraphed :

" Salem avenue lots sold if you will accept terms as per my letter of this morning."

And wrote same day :

"We understand that some other agents have wired you that property was sold by them. We were the first to sell," &c.

This was the sale to Simmons, upon which Kramer was sued, disposed of at this term in suit of *Simmons* v. *Kramer*, *ante*, p. 411. Stated that they had wanted sixty days to raise the cash payment; but that they later in the day had heard from parties who would pay the $3,000 required in cash (this being because other agents claimed to have sold Simmons during the day), adding: "In addition to this, *if you will close sale with our parties*, we will send you our check for $100, or you can deduct same from our commission," and telegraphed on same day:

"Sold lots as per your letter. We claim first sale. Disregard my letter of this morning."

On the same day other agents, Asberry, Greider & Co., still telegraphed to Kramer:

"Will you take $11,000, third cash, on two years?"

And on the same day Hanckel, Kemp & Co., later in the day telegraphed:

"Do not close for $11,000; might get you $12,000."

On October 11th Hockaday & Co. wrote to this appellant that they had made sale of these same lots.

The said firm, Hanckel, Kemp & Co., now claim to have made a sale, binding on Kramer, to the appellees; and this suit is brought by the appellees, as already stated, to compel Kramer to specifically perform the contract made for him by his said agents, Hanckel, Kemp & Co.

In the first place it is clear that if Hanckel, Kemp & Co. have ever been appointed the agents of Kramer to make a sale for him, they have failed to produce any proof of their appointment as such. Kramer had said to them: " I will sell," &c., " my price is," &c., and " I have concluded to take." But he has nowhere authorized them to act as his agents; and they themselves evidently did not claim any such authority at the time. In the letter announcing the alleged sale they say : " In addition to this, if you will close sale with our parties we will send you our check for one hundred dollars." Now they say they had authority, and did at this date make a binding sale, on which the appellees (Blair, &c.) brought their suit. And on the same day, after they had made a valid and binding sale, as they now claim, they telegraphed him : " Do not close for eleven thousand; might get you twelve thousand." How could they do this if they had already sold for $10,000 ? In addition, it is proved by the deposition of W. A. Kramer that the appellant declined to appoint them, or any other real estate agents or brokers, his agents to make a binding sale for him.

As has been said, Kramer had no dealings directly with the appellees ; they claim only through their dealings with Hanckel, Kemp & Co., who were, as they themselves admit, agents, with special and limited powers, to find a purchaser, subject to the ratification of Kramer. It was incumbent upon the buyers to look to the authority of the special agent, and they cannot derive any benefit from an unauthorized act of the agent. The record shows that, pending the negotiations, and while they were trying to borrow the money to make the cash payment, and offering other terms, the appellees and the agents knew that other persons anxious to become the purchasers had before that offered the price named.

As was said by Judge Pendleton in *Hooe et als.* v. *Oxley & Hancock,* 1 Wash. 23 : " Agents may be clothed either with general or special powers. (1) A general agent may do everything which the principal may; powers of this sort are not

usually granted, and none such appear in the present case. (2) Of the second sort are agents limited as to the objects or the business to be done, and left at large as to the mode of transacting it? If a particular mode is not prescribed by the original power, that which the agent may adopt the principal may, by approving, sanctify, and give to it equal validity as if it had made a part of the original authority, excluding the idea of collusion between the agent and third party. To abuse the power conferred by the principal, such a circumstance would defeat the third party in his attempt to charge the principal. Special agents are limited as to the objects or business to be done, and must in all things pursue the power or authority which is given them, both as to the object and manner of effecting it, if that be also prescribed. They are the creatures of the power or authority, and therefore cannot in any manner exceed it or deviate from it, and, if they do, the principal is not bound."

" If a person be appointed a general agent, as in the case of a factor for a merchant residing abroad, the principal is bound by his acts. But an agent constituted for a particular purpose and under a limited and circumscribed power, cannot bind the principal by any act in which he exceeds his authority; for that would be to say that one man may bind another against his consent." Opinion of Buller, J., in *Fann* v. *Harrison*, 3 T. R. 762; *Bay* v. *Coddington*, 5 John. Ch. 58.

" A special agent, constituted for a particular purpose and under a limited power, cannot bind his principal beyond his authority. This is a very clear and settled rule." Ch. Kent, in *Skinner* v. *Dayton*, 5 Johns. Ch. 304; citing *Nixon* v. *Hyserotts*, 5 Johns. Rep. 58; *Gibson* v. *Colt*, 7 Johns. Rep. 390. See; also, *Denning* v. *Smith*, 3 Johns. Ch. 345.

With respect to an agent constituted for a particular purpose, he who deals with him deals at his peril, if the agent passes the limit of his power; for it was his duty and his right to look to his instructions for the extent of his authority. It is

said that a principal is liable to a third party for all contracts entered into by his broker or agent within the scope of his authority, as defined by direct instructions. The broker must obey his instructions in order to bind his principal. *Siebold* v. *Davis*, 67 Iowa, 560; Story on Agency, secs. 126, 127.

Real estate brokers or agents may be defined to be those who negotiate the sale or purchase of real property; but the power of a real estate agent or broker does not generally extend to execute a sale, but merely to bring the parties together, or to negotiate for the contract. *Pringle* v. *Spaulding*, 53 Barb. 17; *Haydock* v. *Slow*, 40 N. Y. 363; *Force* v. *Dutcher*, 18 N. J. Eq. 401; *Morris* v. *Ruddy*, 20 N. J. Eq. 236.

It is clear that there must be an appointment to constitute one an agent. It is a rule of law that no one can become an agent except by the will of the principal. Evans on Agency, 22; *McGoldrick* v. *Willits*, 52 N. Y. 612; *Rochester Bank* v. *Bentley*, 27 Minn. 87; *Gifford* v. *Landrim*, 37 N. J. Eq. 127.

"In the absence of evidence of express appointment, of ratification, or of an estoppel, there is no sufficient evidence of agency." *Alexander* v. *Rollins*, 84 Mo. 657.

It is said that an agency cannot be proved by general reputation, but is a fact to which a witness having knowledge of its existence may testify. *Railroad and Banking Co.* v. *Smith*, 76 Ala. 572.

When the principal, in a suit brought to enforce a contract entered into in his name by a supposed agent, denies the authority of the agent, the burden of proof to establish the agent's authority is on the party who seeks to enforce the contract. *McCarty* v. *Strauss*, 21 La. Ann. 592.

In the case of *Grant* v. *Ede*, 85 Cal. 418. (20 Am. Rep. 237), where the supposed authority to make a complete sale was as follows: "As you stated you could get $30,000 for the place you occupy on Market street, and, if you can, *we will sell at that price* any time before September 1st, 1887, and allow you 2½ per cent. on said price, and, if no sale· is made, no expenses

made to us," and on this authority the agent, Martin, sold to Grant (the appellant), on the 23d of August, 1887, for $30,000, $500 cash and residue on execution of deed by Ede, and signed himself as agent for Ede, and received $500 as part of purchase-money, it was held that "we will sell" does not mean that Martin is authorized to sell, the court saying: "A general authority to sell real estate includes merely the power to find a purchaser therefor, and the agent cannot conclude a contract which will be binding upon his principal." And Mr. Freeman appends a note to this case, citing *Shultz* v. *Griffin*, 18 Amer. St. Rep. 828, saying: "Such letter does not constitute an agreement of the principal which such purchaser can enforce, as it merely fixes a price, and does not specify any form of deed or time of payment, or of delivery of possession, or authorize the agent to make such specifications."

In every letter written to these agents Kramer said "I will take," or "I will sell," "I have concluded to sell," or "my price is," and nowhere appointed any agent to sell for him. He authorized them to find a purchaser, and agreed to pay them a commission for doing this. Their employment was to conduct negotiations for the sale of this real estate, and no one better understood this than these agents, who did not consider at the time that their employment was such as would authorize them to conclude any sale, except subject to the approval of their employer. And of these negotiations the evidence shows that the appellees were fully informed, the correspondence being conducted at their solicitation. See Fitch on Real Estate Agencies, pp. 7, 14.

It is clear that Hanckel, Kemp & Co. had no authority to make a binding contract for their principal, and, having entered into one in his name, their act, so far as he is concerned, is null. There has been no sale made by Kramer (the appellant), nor by which he is in any degree bound.

The hustings court of Roanoke City having decided otherwise, the decree so deciding and appealed from will be reversed

and annulled, and such decree rendered here as the said court ought to have rendered.

And this disposes of the case, so that it is unnecessary to consider the second branch of the case as to the question whether the contract, if valid and binding on Kramer, is such that the court should, in the exercise of a judicial discretion, specifically perform.

FAUNTLEROY, J., concurred in result.

DECREE REVERSED.