# Richmond.

## HALSEY v. MONTEIRO.

### FEBRUARY 13, 1896.

1. REAL ESTATE AGENTS—*Definition—Powers—Special Agents.*—A real estate broker or agent is one who negotiates the sale of real estate. His business generally is to find a purchaser who is willing to buy on the terms fixed by the owner. He has no implied authority to bind his principal by signing a contract of sale. Nor has he such authority to fix terms of sale, time of possession, nor the covenants to be contained in the deed. Nor can he materially change terms of sale fixed by the principal without his consent. He is a special agent, and must pursue his instructions and act within the scope of his limited power; and those who deal with him, if he exceeds his authority, do so at their peril.

2. AGENCY—*Agent to Sell Land Not to be Purchaser—Disclosures—Ratification.*—An agent to sell cannot become a purchaser, except after the fullest disclosure to his principal of all facts which may affect his interest. The relation between the parties is one of trust and confidence, and the utmost good faith is exacted of the agent. He cannot sign a contract for the sale of the principal's land when he is himself interested as purchaser. If such contract be made by the agent, the principal will not be held to a ratification thereof, except after full knowledge of all the material facts. If these be either suppressed or unknown, the ratification will be treated as invalid, because founded in fraud or mistake.

3. SPECIFIC PERFORMANCE—*Nature of Contract to be Enforced—Contract of Agent—Ratification.*—Specific performance is not a matter of absolute right, but rests in a sound judicial discretion. It will not be decreed unless the contract be equitable and free from fraud, misapprehension, or mistake. A court of equity will not compel a man specifically to perform a contract which he never intended to enter into, or which he would not have entered into had its true effect been understood. If the contract be made with an agent, the agency must be established by clear, certain, and specific proof. And, if ratification of an unauthorized contract be relied on, it must be shown by clear and satisfactory proof that such ratification was made with full knowledge of all the material facts affecting such contract.

Appeal from a decree of the Circuit Court of Henrico county, pronounced April 5, 1893, in a suit in chancery wherein the appellee was the complainant, and the appellant was the defendant.

*Reversed.*

The opinion states the case.

*Marye & Fitzhugh*, for the appellant.

*Abram C. Eby*, for the appellee.

RIELY, J., delivered the opinion of the court.

The appellee filed his bill to compel the appellant specifically to perform an alleged contract in writing for the sale of the latter's land. The contract purports to have been made on behalf of the appellant by M. C. Staples & Co., real estate agents, who sought to sustain it as against their principal, and insisted upon their authority to bind him. He denied their authority to bind him, and likewise the claim of the appellee to have specific performance of the alleged contract. The burden was upon the appellee to prove against the appellant a valid and binding contract.

The agreement in writing of March 15, 1887, by which J. M. Halsey, the appellant, placed his land in the hands of Staples & Co. for sale, prescribed no time within which it was to remain in force, but in this respect was wholly indefinite. Halsey testified that it was the understanding between them and himself that it was to continue for one year, and this was not specially denied by them in their testimony. His letter to them of February 12, 1891, in which, after stating that he had offered his farm for sale through them for a year, he authorizes them to list it for sale for the next twelve months upon new and different terms, and their sub-

sequent conduct, explicable only upon the theory that they accepted the new authority, confirm his understanding of the previous agreement. But whether it had expired by limitation or not, the evidence leaves no doubt but that it was superseded by the new agreement, and was thereafter without any force or effect.

The only authority possessed by Staples & Co. to represent Halsey in the sale of his land, at the time they negotiated the sale of it to the appellee, was contained in the letter of February 12, 1891, referred to above, which is as follows :

"MITCHELL'S STA., Feb'y 12, 1891.

"*Messrs. Manning C. Staples & Co., Richmond, Va.:*

"Gents,—Your favor of the 5th inst. received; contents noted. In reply, will say I must decline the offer to trade my farm for the houses with a mortgage of $4,000. Real estate is advancing, and I have offered my farm through you at extremely low rates for a year, hoping to make a sale. You may list it for twelve months next on the following terms : 732⅓ acres at $16.00 per acre, payable as follows : ⅓ cash ; balance in 1, 2, and 3 years ; or I will take $10,000 cash. I will allow you a liberal commission if you can place the farm.

"Most truly yours, &c.,

"J. MORTON HALSEY."

A real estate broker or agent is defined to be one who negotiates the sale of real property. His business generally is only to find a purchaser who is willing to buy the land upon the terms fixed by the owner. He has no authority to bind his principal by signing a contract of sale. A sale of real estate involves the adjustment of many matters besides fixing the price. The delivery of the possession has to be settled ; generally, the title to be examined, and the conveyance with its covenants to be agreed upon and executed

by the owner—all of which require conference and time for their completion. They are for the determination of the owner, and do not pertain to the duties and are not within the authority of a real estate agent. For obvious reasons, therefore, the law wisely withholds from him any implied authority to sign a contract of sale in behalf of his principal. 3 Wait's Actions and Defences, 286-87; *Davis* v. *Gordon*, 87 Va. 559, 566; *Kramer* v. *Blair*, 88 Va. 456; *Force* v. *Dutcher*, 18 N. J. Eq. 401; *Morris* v. *Ruddy*, 20 N. J. Eq. 236; *Duffy* v. *Hobson*, 40 Cal. 240; and *Grant* v. *Ede*, 85 Cal. 418.

A simple inspection of the aforesaid letter shows that it only empowered Staples & Co. to find a purchaser for the land. They are authorized to "list" it for twelve months, and are informed that a liberal commission will be allowed them if they can "place the farm." No power whatever is conferred upon them to sign a contract of sale. There is not a suggestion of such authority.

Nor was the sale even effected in accordance with such authority as was entrusted to them by their principal. The price at which they were empowered to sell the land was $16 per acre, making the agregate amount for the 732¼ acres $11,717, payable *one-third cash*, and the residue on a credit of one, two, and three years; or $10,000 cash. On March 20, 1891, they wrote and informed him that they had "sold his farm for $10,000; *one-fourth cash*, and the balance in three years"; and added: "The price is in accordance with your instructions to us in your letter of last month, only we altered your terms a little; * * * and in fact, to make this sale, we had to tell the purchaser that we would take a small interest in the purchase, to which we suppose you have no objections, acting as your agents in the sale of the land." Halsey telegraphed in reply: "Will accept terms offered, provided one-third cash is paid." On receipt of his telegram,

they urged him by telegram and letter to accept one-fourth cash; but on the next day they wrote to him as follows: " Since writing you and telegraphing you on yesterday, we have gotten the party to consent to pay the one-third cash, and balance in three years, and we have closed the sale and signed the agreement as your agents." They did not, however, transmit to him the contract, or a copy of it; nor did they inform him who was the purchaser, or the extent of their interest in the purchase, but withheld both from him. And when the contract of sale, which they executed in his name, was exhibited by them, it disclosed the fact that the sale was not made by them for one-third cash, but, with the exception of the payment of five dollars, the appellee was given sixty days within which to comply with the terms of sale. It also disclosed the further fact that the residue of the purchase money was made payable in thirty-six months. The letter of February 12, 1891, prescribed that the terms of sale should be one-third cash, and the residue in one, two, and three years. He was urged by Staples & Co., when negotiating the sale to the appellee, to accept one-fourth cash. This he peremptorily declined to do. When they notified him they had sold the land, they informed him that the sale was for one-third cash, when in reality the purchaser was given sixty days within which to pay it. And instead of the residue of the purchase money being payable in instalments at one, two, and three years, the whole was deferred for three years.

In *De Sollar* v. *Hanscome*, 158 U. S. 216, it was held that an agreement for the sale of real estate signed by the agent for his principal was not within the scope of the authority given to him, where he was authorized to sell for $5,000, one-half cash and the balance on time, and he sold for $5,000, $200 cash, $2,300 in three weeks, and the balance on time.

And so authority, in the case at bar, to sell for one-third cash, was not satisfied by an agreement to pay within sixty days. And equally without authority was the postponement of the whole of the credit payments until the expiration of three years, when the authority of the agent specified that they should be paid in one, two, and three years.

But even if Staples & Co. had been empowered as agents for Halsey to sign a contract for the sale of his land, becoming joint purchasers with the appellee, they could not have done so in this instance so as to bind him. The relation between principal and agent is one of trust and confidence, and the law exacts of the agent the utmost good faith towards his principal. It is a general rule that an agent cannot become the purchaser of the property of his principal. If he may do so at all, it must be when there has been no concealment or deception on the part of the agent, and after he has disclosed all the facts concerning the interest he is to take in the purchase, so that his principal may act with full knowledge. Where duty and interest conflict, the law forbids. The position of seller and buyer are antagonistic. It is the interest of the owner to sell for as high a price as he fairly can, and of the purchaser to buy as low as he may. So the *duty* of the agent to obtain the highest price for his principal conflicts with *his own interest* to get the property for as little as possible. An agent cannot, therefore, so act as to bind his principal when the agent has an adverse interest in himself. Story on Agency, secs. 210 and 211 ; *Cook* v. *Berlin Co.*, 43 Wis. 433 ; *Torrey & Gilbert* v. *Bank of Orleans*, 9 Paige 649 ; and *Smith* v. *Townsend*, 109 Mass. 500.

The letter of Staples & Co. of March 20, 1891, in which they informed Halsey that they had sold his farm, was, to say the least, reasonably calculated upon its face to mislead him. It announced that the sale was for *one-fourth* cash, instead of

*one-third,* as required by his letter of February 12, 1891.   It further stated that the price was in accordance with the instructions contained in his said letter, only that they had " altered your [his] terms a little."   The conclusion from this was natural and reasonable that the alteration in the terms consisted in making the cash payment one-fourth instead of one-third.   It stated that the balance was to be paid " in three years," which, knowing the terms of credit he had pre-scribed, it was natural for him to construe to mean in instal-ments, all payable within three years.   And such was the construction he placed upon their letter.   He states positively, in his deposition given in the case, that if he had not so con-strued their letter, and had understood that the payment of two-thirds of the whole purchase money was to be deferred for three years, he would never have entertained their pro-position of sale.

Under these circumstances there could be no valid ratifica-tion of the contract of sale of March 27, 1891, so as to bind him for its specific performance.   The contract was not one they were authorized to make, and the ratification of an unauthorized contract, in order to be effectual and obligatory, must be shown to have been made with a full knowledge of all essential facts connected with the transaction to which it relates.   To be a valid ratification, the principal must not have labored under a mistake or misapprehension of the real nature of the facts, or had reasonable ground for such mistake or misapprehension.   *Dickinson* v. *Conway,* 12 Allen 487 ; *Combs* v. *Scott,* 12 Allen 493, and *Dean* v. *Bassett,* 57 Cal. 640.   " No doctrine is better settled, both upon principle and authority, than this," said Judge Story, in *Owings* v. *Hull,* 9 Peters 607, " that the ratification of an act of an agent, previously unauthorized, must, in order to bind the principal, be with full knowledge of all the material facts.   If the material facts be either suppressed or unknown, the ratifica-

tion is treated as invalid, because founded in mistake or fraud." It is plain that any supposed ratification by the appellant of the contract of sale in this case was made in ignorance, and under a mistake of the real facts relative to it, and that his mistake was caused by the deceptive letters of his agents, who suppressed the real facts, instead of making that full and fair disclosure that the law exacts of an agent to his principal.

A real estate agent is not a general agent, but a special agent, acting under a limited power. He must pursue his instructions and act within the scope of his limited power; not exceed nor deviate from it. He who deals with him, if the agent exceeds or deviates from his authority, deals with him at his peril. He cannot in such case hold the principal bound, unless there has been an intelligent ratification of the unauthorized act of the agent, free from mistake or fraud. Story on Agency, sec. 126; *Blair* v. *Sheridan*, 86 Va. 527; *Davis* v. *Gordon*, 87 Va. 559; and *Kramer* v. *Blair*, 88 Va. 456.

The specific performance of a contract is not a matter of absolute right, but rests in a sound, judicial discretion. This is a principle of equity jurisprudence settled by a long course of decisions. The contract, to be specifically enforced, must be equitable, and free from fraud, misapprehension, or mistake. And when specific performance is sought of a contract made with an agent, the agency must be established by clear, certain, and specific proof. *Blair* v. *Sheridan*, 86 Va. 527; and *Simmons* v. *Kramer*, 88 Va. 411. Equally clear and satisfactory must be the proof of the ratification by the principal, with full knowledge of all the material facts of the un-authorized contract made by his agents. Otherwise, the enforcement of the contract would be inequitable, and equity will not decree specific performance when it would be inequitable to do so. Waterman on Spec. Per. of Contracts,

sec. 6; *Stearns* v. *Beckham*, 31 Gratt. 379; *Averett, Trustee,* v. *Lipscombe*, 76 Va. 404; *Fishburn* v. *Ferguson*, 85 Va. 321; and *Grizzle and Wife* v. *Sutherland*, 88 Va. 584.

In Kerr on Fraud and Mistake, p. 411, the doctrine is thus stated: " A court of equity will, however, in many cases refuse to grant a plaintiff the peculiar remedy of specific performance of a contract which the defendant has entered into under a mistake, although the plaintiff was not privy to the mistake, nor implicated in its origin. A man who seeks to take advantage of the plain mistake of another cannot come to a court of equity to assist him in doing so, but must rest satisfied with the remedies which a court of law will give him. A court of equity will not enforce specific performance of an agreement more favorable to one party than the other, and involving hardship upon him, if there be *reasonable grounds for doubting* whether he entered into it with a knowledge of its nature and consequences. The court will not compel a man specifically to perform a contract which he never intended to enter into, or which he would not have entered into had its true effect been understood. If the description of the property, the subject matter of the sale, *or the terms of the contract are ambiguous, so that one party may have reasonably made a mistake as to the subject matter or the terms of the contract, or may have reasonably put a different construction on the contract* from that which was contemplated by the other, the court will not assist either of them in enforcing the contract against the other."

This is clearly a case in which, in view of the well-settled principles and maxims of equity, it would be inequitable to grant the relief asked.

For the foregoing reasons, the decree of the Circuit Court must be reversed, and the bill of the complainant dismissed.

*Reversed.*