# Richmond.

## LEE v. PATILLO AND OTHERS.

### February 2, 1906.

1. TRUST RELATIONS—*Principal and Agent—Case in Judgment—Rescission.*—The evidence in this cause shows that a contract was made by the complainant with one of the defendants whereby the complainant authorized the defendant to sell all the timber on a given tract of land at $2,000, cash. Subsequently, defendant represented that the timber could not be sold at that price, and recommended a thirty-day option at $1,500; upon false representations as to facts about the timber, he induced complainant to confer authority upon him to "buy or sell" the timber at $1,200. Defendant assured complainant that he would put forth his best efforts to obtain the highest possible price for the timber, and complainant reposed the utmost confidence in his judgment and integrity. Upon the assertion of defendant that he had obtained purchasers at $1,250, complainant conveyed to them the timber. In fact, the purchasers had agreed to pay $2,000 for the timber, but this fact was kept secret from complainant. Upon discovery of the facts, complainant sued to rescind the contract fixing price at $1,200, on the ground of fraud. The said defendant answered denying the fraud, and setting up an option contract to purchase at the price fixed, and the purchasers answered and denied the right to rescind as far as they were concerned.

*Held:*

There was a *quasi* relation of principal and agent existing between complainant and said defendant—a relation of trust and confidence, demanding the utmost good faith on the part of defendant, which he has not exercised, and the contract made with him must be set aside for fraud, but as the purchasers are willing to abide by their contract, a decree will be entered directing the payment of $1,950 to the complainant, and of $50 to said defendant for his services.

Appeal from decree of the Circuit Court of Nottoway county. Decree for defendant. Complainant appeals.

*Reversed.*

The main defense relied upon by the defendant was that the contract in suit was a mere option contract; that no provision was made for his compensation in any other way than by selling at an advance. He denied most emphatically that he was the agent of the complainant, or that he had ever made any statement to him that was in any sense untrue, so far as he knew, or that he had, at any time made any statement for the purpose of deceiving and defrauding the complainant. He says that he obtained the first option at $2,000, but was wholly unable to sell the timber for that price, or to get any reasonable offer for the timber; that the complainant then gave him a thirty-days' option at $1,500, and after getting this he made various fruitless efforts to sell the timber, and thereafter endeavored to get the complainant to give him an option at $1,000, which the complainant refused to give, but did give him an option at $1,200, which was drawn by complainant himself and delivered to the defendant, and that it was after the extension of this option that he effected the sale in the bill mentioned.

The contract under which the defendant acted, with the endorsements thereon, is as follows:

"In consideration of one dollar cash in hand paid, I have this day sold to S. J. Patillo the right to buy or sell all the standing timber, except cedar posts, standing upon 844 acres of land, situated in the county of Nottoway, Va., on the waters of Big Nottoway river, for the sum of twelve hundred dollars ($1,200), to be paid in cash thirty days from the date of this option. It is understood and agreed between S. J. Patillo and myself that the said timber shall be cut and carried off of the

said premises within ten (10) years from the date of the sale, or the same shall be null and void. I will give a valid title to the said timber for the time mentioned.

"Witness my hand this the 24th day of June, 1904.
"(Signed)   HENRY E. LEE."

On the back of which appeared the following words and figures:

"I hereby extend the limitation of this option to Aug. 1st, 1904, it having been taken up by Messrs. Cobb & Robertson.
"(Signed)   HENRY E. LEE."

Also the following in pencil: "As well as I can remember this was endorsed on the 16th July.
"(Signed)   B. E. COBB."

After the defendant had effected a sale to Cobb & Robertson the complainant, in his own right, and as guardian for Sarah A. Lee, and attorney for Mary F. Lee, executed a deed in consideration of the sum of $1,200, conveying unto Cobb & Robertson the timber mentioned in the opinion.

*Wm. Hodges Mann* and *J. Taylor Thompson,* for the appellants.

*A. D. Watkins,* for the appellee.

WHITTLE J., delivered the opinion of the court.

This appeal is from a decree dismissing the bill in a suit in equity brought by the appellant against the appellee to rescind a contract on the ground of fraud in its procurement.

The contract bears date June 24, 1904, and by its terms the plaintiff conferred authority upon the defendant to "buy

or sell" the standing timber upon a tract of 844 acres of land,. situated in Nottoway county, for $1,200, to be paid within thirty days from the date of the contract.

The circumstances which led up to and induced the plaintiff to execute the contract were as follows: In May, 1904, the defendant sought and obtained from the plaintiff authority to sell the timber for $2,000, cash; but, in a subsequent interview, after the defendant had inspected the timber, he represented to the plaintiff that he could not effect a sale at that price, and advised the execution of a thirty-days' option at $1,500, at the same time assuring the plaintiff that he would put forth his best efforts to obtain the highest possible price for the timber.

On June 24, 1904, the defendant again approached the plaintiff on the subject, and declared that he had been unable to dispose of the timber for $1,500; that the quantity was inconsiderable; that the pine trees had become infested with bugs, which in a few years would utterly destroy them; and that he could not then realize more than $1,000 for the timber. As the result of these representations, the plaintiff, who seems to have reposed the utmost confidence in the judgment and integrity of the defendant, executed the contract in controversy, which was subsequently extended to August 1, 1904, upon the assertion of the defendant that he had obtained purchasers (Cobb and Robertson) for the timber at the price of $1,250; of which amount $1,200 was to be paid to the plaintiff, and the residue to the defendant as compensation for his services.

Relying and acting upon the asseveration of the defendant that $1,250 was the actual price at which he had sold the timber, the plaintiff, on July 22, 1904, conveyed the same to the purchasers, Cobb and Robertson. On the day following, the defendant unintentionally delivered to the plaintiff a secret agreement between himself and Cobb and Robertson, by which

they obligated themselves to pay him $800, in addition to the $1,200 which they had stipulated to pay the plaintiff for the timber. Discovering his mistake, the defendant seized and recovered possession of the paper, but not until after the plaintiff had become apprised of its purport.

From the foregoing narration of the facts disclosed by the record, it is obvious that the plaintiff was not dealing with the defendant as with a stranger, but that the *quasi* relation of principal and agent existed between them—a relation of trust and confidence, which, upon familiar principles, imposed upon the defendant the positive duty of exercising the utmost good faith towards his principal. Story on Agency, §§ 207, 214; Mechem on Agency, sections 454, 455, 456, 469; *Moseley's Admr.* v. *Buck,* 3 Munf. 232, 5 Am. Dec. 508; *Halsey* v. *Monteiro,* 92 Va. 581, 588, 24 S. E. 258; *Central Land Co.* v. *Obenchain,* 92 Va. 130, 22 S. E. 876; *Jackson* v. *Pleasanton,* 95 Va. 654, 29 S. E. 680.

Yet the evidence clearly discloses a premeditated and systematically pursued purpose on the part of the agent to overreach and defraud his principal. Thus with respect to the first two contracts, the witness Cobb, who was introduced by the defendant, testified: "He (the defendant) said that he did not try to sell under the $2,000 option, hoping to get a better one at the expiration of it. He said at the expiration of the $2,000 option, that he could not handle it at that price. Mr. Lee then gave him an option at $1,500, which he kept and handled as he did the $2,000 option. At the expiration of the $1,500 option, Mr. Lee gave him the $1,200 option." Continuing the witness says: "He asked me not to mention what I had paid for the timber, as it would have a tendency to make all of us have to pay more for standing timber; and suggested that I might say $1,200 was the purchase price."

For the purpose of securing a renewal and extension of the contract of June 24, 1904, the defendant told the plaintiff that $1,200 was the price agreed to be paid for the timber (making a similar statement to three other persons); when at that time he had made the sale to Cobb and Robertson for $2,000, and had in his possession the secret agreement that he was to receive $800 of that amount.

So that, in every aspect of the case, the bad faith of the defendant is palpable and flagrant, and cannot receive countenance in a court of equity, which is always open to afford relief in such cases. *Wilson* v. *Carpenter,* 91 Va. 183, 189, 21 S. E. 243, 50 Am. St. Rep. 824, and authorities cited.

Since, however, it appears that the defendants, Cobb and Robertson, are still willing to abide by their contract of the purchase of the timber at the price of $2,000, and to pay the same as the court may decree, the decree of the Circuit Court will be reversed, and this court will make such order as that court ought to have made, and direct the payment by Cobb and Robertson of $1,950 to the appellant, and $50, the residue of the $2,000, to the appellee.

*Reversed.*