# Richmond

EARLE T. MASON v. A. N. HODGSON AND OTHERS.

January 21, 1952.

Record No. 3864.

Present, Eggleston, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Oren R. Lewis,* for the appellant.

*Charles Pickett* and *Harry A. Shockey,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

At the April, 1950, term of the Circuit court of Fairfax county J. R. Nesbitt and G. W. Coleman filed a bill in equity against Earle T. Mason for the purpose of removing a cloud upon the title to 52 acres of land which they purchased from A. N. Hodgson, Emory R. Hodgson, R. M. Hodgson and T. M. Hodgson by deed dated March 25, 1950.

The cloud upon the title was alleged to be a contract of sale signed by R. M. and T. M. Hodgson, two of the former owners of the land, and Earle T. Mason who claimed an option to buy it under the contract. The bill of complaint averred that the contract was improperly recorded, was not a valid and enforceable contract and had been revoked by the Hodgsons prior to acceptance by Mason. It also prayed that the contract be declared of no effect and removed as a cloud upon the title and that damages be awarded for failure of Mason to remove the cloud.

A demurrer to the bill was overruled on May 24, 1950, by a decree which contained a stipulation of counsel releasing the contract. In lieu of the contract counsel for complainants agreed to retain the sum of $65,000 as security for any judgment which Mason might recover against the Hodgson brothers.

The decree also permitted the filing of Mason's cross-bill against the Hodgson brothers. The cross-bill claimed damages in the sum of $18,000 alleged to have been sustained by Mason by reason of the breach of the contract. It claimed in substance that the contract of sale bearing date January 27, 1950, was valid and that Mason accepted the counter offer on January 31, 1950, which was endorsed on the contract by T. M. Hodgson and R. M. Hodgson, who acting for themselves and their two absent brothers, agreed to sell the property for $52,000, and that he delivered the contract with his signed acceptance and the $5,000 deposit required thereunder to Judson Reamy and Son, the agent of the Hodgsons.

The cross-bill further charged that the Hodgsons had disabled themselves from performing the contract by conveying the property to Nesbitt and Coleman for $65,000 prior to the time any further performance was due by him under the contract; that notwithstanding a formal notice sent by him on February

15, 1950, that his title examination had been completed and that he was ready to make settlement, the Hodgsons, with full knowledge of his claim, wrongfully consummated their agreement made on or about February 3, 1950, and conveyed the property to Nesbitt and Coleman.

On May 24, 1950, a separate decree was entered dismissing Nesbitt and Coleman as parties and the cause was ordered to proceed under the style of "Earle T. Mason v. A. N. Hodgson, Emory R. Hodgson, R. M. Hodgson and T. M. Hodgson".

On June 9, 1950, the Hodgsons filed their answer to Mason's cross-bill denying all material allegations therein contained. They denied that Mason had complied with the endorsement on the contract, that Reamy and Son was their agent, and asserted that neither Reamy and Son nor Real Estate Service, Incorporated, had any right to change their contract or to vary its terms.

Upon the issues thus joined the trial court heard the testimony *ore tenus* and on October 26, 1950, entered a final decree dismissing the cross-bill on the ground that its allegations had not been sustained by the proof. It is from this decree that Mason appeals.

While the record discloses six assignments of error, the only real issue is: Did the court err in dismissing the cross-bill filed by Earle T. Mason on the ground that its allegations had not been sustained by the proof?

The record discloses that the Hodgson brothers inherited the land in question from their father who died intestate years before the inception of this litigation. About December 17, 1949, Thomas M. Hodgson and Reginald M. Hodgson gave an exclusive sales listing on the land to Real Estate Service, Incorporated, for $52,000.

On January 30, 1950, Judson Reamy, Jr. approached James H. McMullen of Real Estate Service, with an offer to purchase the land. Later that day McMullen received a telephone call from Reamy which resulted in a meeting that evening at the home of Thomas M. Hodgson. Here Reamy met Reginald M. Hodgson and Thomas M. Hodgson for the first time. Mason was not present at the meeting and the record shows that the Hodgsons never saw him until this litigation began. Reamy submitted an offer to purchase the property which was declined by the two brothers then present. Whereupon, at the instance of

Reamy, McMullen endorsed upon a contract form the terms which the two brothers present indicated would be acceptable to them and this endorsement was signed by Thomas M. and Reginald M. Hodgson. The endorsement was as follows:

"This offer to purchase is agreeable to the undersigned provided:

"(1) Deposit of $5,000 is placed with Real Estate Service, Inc.

"(2) Balance of $47,000 in cash on or before 60 days from date. The above stipulation to be accepted by purchaser within 24 hrs. from date."

The time of signing the 24-hour option endorsement was 9:00 p. m., Monday, January 30, 1950. Reamy took the signed endorsement with him stating that he would see his client the next day. It was agreed that there would be a meeting the following night (January 31) at which time the offer would be resubmitted. Reamy did not return the following night although the two Hodgsons held themselves in readiness for the meeting. On the afternoon of Tuesday, January 31, Reamy called McMullen and said he would not be able to keep the scheduled appointment because of some unforeseen circumstance which had arisen. On February 1, 1950, Reamy again called McMullen stating that he was prepared to return to the Hodgson home that evening (February 1) for a conference, and wanted to know if McMullen would accompany him. This conversation took place between 12:00 and 1:00 o'clock that day. Later the same day a Mr. Hathaway came to McMullen's office and stated that he represented out-of-town interests, that he had located the Hodgson property and had been sent by Thomas M. Hodgson to Real Estate Service, the exclusive sales agent. McMullen told Hathaway that negotiations were in progress for the sale of the property. Hathaway contacted his principals and told McMullen that in his opinion they would pay as much as $65,000 for the property, whereupon McMullen passed this information to the Hodgsons who directed him to suspend further negotiations with Reamy's client. Within a few minutes after McMullen had received these instructions Reamy appeared at McMullen's office and was told by McMullen that he had been directed to suspend negotiations. Reamy then removed a piece of paper from his portfolio, which he said was a check, and tendered it to McMullen who refused to accept it stating that he had been

specifically instructed to suspend negotiations. This check, which was later introduced in evidence, was for $2,500, signed by Judson Reamy and Son, and dated February 1, 1950.

On the night of February 1, Reamy went to the Hodgson home and was told by Thomas M. Hodgson, "You are twenty-four hours late and I have not seen any new contract or the $5,000". Reamy then said he was going to record the alleged contract and thus put a cloud on the title and tie the property up for two years.

In furtherance of this threat, on February 2, 1950, Reamy had appellant Mason acknowledge the document and it was recorded in the clerk's office of the Circuit Court of Fairfax county at 10:30 a. m. Mason was with Reamy when the paper was recorded. Reamy's explanation as to why he recorded it was, "* * * It was apparent at that point that the principals involved were going to attempt to block that deal. I thought out of justice to *my client* that he should have the protection of having that contract recorded * * *". (Italics supplied)

Mason contends that he signed the contract at 9:00 a. m. January 31, 1950. Reamy testified that Mason came to his office at 9:00 a. m. on January 31, signed the document and gave him $4,000 in cash. Mason says he got a $1,000 bill out of his safety deposit box at the Arlington Trust Company around 9:00 o'clock on the morning of the 31st of January and went to Reamy's office, giving him this $1,000 bill and thirty $100 bills which he brought from his home. Reamy testified that he deposited this money in the Arlington Trust Company about two o'clock that day and then went to see McMullen of Real Estate Service, Incorporated, with his check for $2,500 (dated February 1, 1950), which he then tendered.

The two Hodgson brothers who signed the endorsement on the sales contract had stipulated: "Deposit of $5,000 to be placed with Real Estate Service, Inc. * * * The above stipulation to be accepted by purchaser within 24 hrs. from date" (9:00 p. m., January 30, 1950). Mason contends he signed this contract form accepting its terms. He was charged with knowledge of the provisions of the Hodgson endorsement and yet he in no way complied with it. The stipulation was "to be accepted by the purchaser (Mason) within 24 hours from date". What money he did pay was paid to Reamy and not to Real Estate Service as was required.

■ The court had a right to conclude from the evidence presented that the money was not paid by Mason to anyone within the 24-hour limit and that the provisions of the endorsement were not complied with.

■■ The Hodgsons had a right to place any limitation they desired in their contract for the sale of their property, and unless the terms of the contract were complied with they were not bound thereby. Reamy was not the agent of the two Hodgson brothers who signed the endorsement. He states that Mason is "my client". Even if Reamy had been the agent of the Hodgsons he had no right to vary the terms of this limited contract.

■ A real estate agent is not a general agent but a special agent acting under limited power. He is compelled to act within the scope of such power. *Kramer* v. *Blair*, 88 Va. 456, 13 S. E. 914; *Halsey* v. *Monteiro,* 92 Va. 581, 24 S. E. 258. His usual duty is to find a purchaser ready, able and willing to enter into a contract upon the terms and conditions fixed by the owner, and he has no authority to bind the owner unless the owner has expressly or by clear, necessary implication authorized him to do so. *Voyentzie* v. *Ryan,* 154 Va. 604, 153 S. E. 688; Michie's Jurisprudence of Va. and W. Va., Vol. 3, page 517, Brokers, § 10.

The evidence in this case was heard *ore tenus* by the learned trial judge, and if there is credible evidence to support the finding of the chancellor we must accept it, just as we must accept a jury's verdict sustained by evidence which the jury might have believed. *Henrico County* v. *Richmond,* 177 Va. 754, 782, 15 S. E. (2d) 309; *Hastings* v. *Taylor,* 185 Va. 13, 37 S. E. (2d) 767; *Falls Church* v. *Board of Sup'rs* (1951), *ante,* p. 112, 68 S. E. (2d) 96.

By the record it is conclusively shown that the endorsement on the sales contract was not complied with by the appellant, Mason. The decree complained of is clearly right and it is

*Affirmed.*