## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

William C. Jones et al.

v.

Eve Friedlander, etc., et al.

October 25, 1967

Case No. A-9577

By JUDGE ALEX H. SANDS, JR.

This case, tried before the Court without jury, is before the Court for decision.

Much of the testimony given in this case is in conflict but the following facts, which for the most part are not in dispute, are a sufficient basis for a determination of the merits of the case.

Prior to her marriage to William C. Jones, Bernice D. Jones, in 1957, acquired an equitable interest in 1505 N. 35th Street through an arrangement under which her sister, the defendant, Willie Goldie Elam, acquired the naked legal title and Bernice put up all of the funds. The undisputed testimony is that at no time has defendant Elam ever had, or claimed, any interest in the premises, her acceptance of legal title being solely for the accommodation of her sister. Bernice paid the full down payment, has paid all subsequent payments and expenses thereon

and has at all times since the purchase occupied the dwelling as a home.

In September, 1965, Bernice, having in the meanwhile married the plaintiff, William C. Jones, was desirous of selling the home for the purpose of acquiring a larger and better dwelling. She contacted a Mr. Plotkin, who had handled her purchase of the 35th Street property and he, in turn, farmed the business out to defendant Eve Friedlander (hereinafter referred to as defendant), who had been recently licensed as a broker and who was operating under the trade name of Town House Realty Co.

Mrs. Friedlander promptly contacted the plaintiffs, secured from Mrs. Jones a written listing of her property for $5,500.00[1] and set about seeking a purchaser for the 35th Street property and seeking to find a suitable home for Mr. and Mrs. Jones (plaintiffs) to purchase. She located a prospective home acceptable to the plaintiffs which would require an $1,100.00 cash deposit[2] but was at first unable to find a purchaser for the 35th Street property. Having located a willing but impecunious prospect, defendant secured a sales contract (Def. Ex. # 6) which called for a $500.00 down cash payment in two installments and the balance payable in monthly installments over a ten year period. This contract, after being approved by plaintiffs, was signed by defendant Elam. Settlement with purchaser, however, was not effected in accordance with the terms of the contract[3] but was consummated by the purchaser assuming the existing first mortgage of $1,628.55 and executing a Bearer Note in the sum of $4,125.00 payable in installments therein set out over a seven year period.

[1] Mrs. Jones actually signed the listing as Bernice Elam (her maiden name) but this is of no significance to the issues under consideration.

[2] Defendant testified that an offer from plaintiffs of $500.00 down payment had been made and rejected by the owners. Plaintiffs deny any such offer having been made. Also the sales contract lists a down payment of $1,000.00 though the testimony is that the deposit was to be $1,150.00.

[3] This contract, as drawn, could never have been effective as it makes no mention of the two mortgages then on the property which would either have had to have been assumed or paid off.

Thus the actual consideration for the purchase was the assumption of the $1,628.55 mortgage and delivery of the $4,125.00 note. Defendant then discounted the note to a third party for $2,312.99 estimated to be the exact amount necessary to pay all closing costs, defendant's commission, the outstanding second mortgage upon the property and produce an amount of cash sufficient to pay the required deposit upon the home to be purchased by plaintiffs. Plaintiffs had previously consented that defendant should withhold from the net proceeds of the sale of the 35th Street property $1,150.00 to be applied upon the purchase price of their home to be acquired. This was done by defendant.

Defendant thereupon delivered what purported to be a seller's closing statement to defendant Elam, together with two checks, one for $1,150.00 and the other for $50.00, both payable to defendant Elam. No copy of the closing statement was ever furnished to plaintiffs nor was their name included upon the checks delivered to defendant Elam.

Almost immediately after the sale the plaintiffs requested a closing statement and being informed that it had been delivered to defendant Elam they requested it of Elam who said she did not have one. Plaintiffs thereupon made demand upon defendant for the balance which they contended a proper accounting of the sale would show to be due them.

The sole issue before the Court, other than that of damages, is whether the manner in which defendant handled the discounting of the purchase money note constituted a breach of her duty towards plaintiffs.

It is basic in this, as in most jurisdictions, that a real estate broker occupies a fiduciary relationship toward the client. 3 Mich. Jur., *Brokers*, § 13, p. 522. Defendant well knew that although the naked legal title to the 35th Street property was in Goldie Elam, the true parties in interest were plaintiffs, for not only was she told this but it was plaintiffs, not Goldie Elam, who employed her to sell the 35th Street residence and to find a suitable home for purchase. While, therefore, it was incumbent upon her to secure Goldie Elam's signature as the holder of naked legal title, to any instruments incident to the sale, it was to plaintiffs that she owed

the duty to give them, in the language of the Court in *Barnard v. Gardner*, 129 Va. 346 (1921), "loyal service and the benefit of the broker's information as to the property entrusted to the broker for sale."

That this duty was violated by defendant in numerous ways is apparent from the evidence. The first breach was by defendant consummating an entirely different contract from that authorized by plaintiffs. The contract which plaintiffs approved and which the purchasers signed was that set forth in Defendant's Exhibit # 6. This contract called for $500.00 cash to be paid by purchasers with the balance of the $5,900.00 purchase price to be paid in monthly installments of $63.29 per month for a period of ten years. Defendant consummated the sale, however, upon a basis of no cash but a promissory note for $4,100.00, together with the assumption of the first mortgage on the property. Defendant justifies this departure from the terms of the written contract upon the basis that the contract as executed would not have yielded the cash necessary to pay off the second mortgage, expenses of sale and to make the required deposit on the new home. Defendant contends she explained all of this to plaintiffs and secured their verbal acquiescence to the change. Plaintiffs deny this flatly. Defendant could well have protected herself by having a new contract executed incorporating the new terms. No rule is better settled than that a broker cannot vary the terms of a contract approved by her clients without the client's consent. *See Halsey v. Monteiro*, 92 Va. 581 (1896); *Kramer v. Blair*, 88 Va. 456 (1891); *see also* 8 Am. Jur., *Broker*, § 63, p. 1019.

But assuming that plaintiffs had agreed to this modification and agreed to accept the $4,100.00 note and the assumption of the first mortgage as the purchase price, defendant would have had no right to discount the note without express authorization from plaintiffs. Again defendant claims to have explained to plaintiffs in detail the reasons necessitating the discount and to have secured their consent thereto, but again this is emphatically denied by plaintiffs.

Finally, since the plaintiffs were known by defendant to be the real parties in interest and as such, her clients, it would be almost unthinkable that the sellers' closing statement, or a copy thereof, would not have been

presented to plaintiffs for their approval and the check in settlement presented to them. On the contrary, however, defendant delivered the checks and the closing statement to Goldie Elam with no copy of either to plaintiffs. Not only was this a breach of duty owed by defendant to plaintiffs but constituted a violation of section II, sub-paragraph 5, of the Rules and Regulations of the Virginia Real Estate Commission. Actually, according to the testimony of William Childress, subpoenaed by defendant, the statement which was rendered and delivered to Goldie Elam was incomplete and unsatisfactory and it is of interest that there is nothing on this statement to suggest the discounting of the note. It is, moreover, inconceivable to the Court upon what basis defendant could justify the payment of $50.00 of the proceeds of sale to Goldie Elam.

Defendant's explanation for all of these irregularities in procedure is that the primary concern of the plaintiffs was the purchase of their new home, that they were not concerned with what price they got for the old home nor in what manner the sale was conducted so long as the net proceeds of the sale were sufficient to meet the down payment on the new home. On the one hand defendant contends that plaintiffs understood the procedures involved and with such full appreciation had agreed to sell for a net of $1,150.00. Almost in the same breath defendant says plaintiffs had said that $2,000.00 was all they expected from the sale. Plaintiffs deny these statements and indeed any common sense view of the evidence bears them out. Bernice Jones (then Elam) had paid $3,750.00 for the home and her husband, William, had added substantial improvements to the property, including a room, bath and a rewiring of the house. The sales price originally fixed by plaintiffs was $5,500.00 which, in view of the two existing mortgages on the property, would have left an equity of some $3,000.00 in the property.

Defendant contends that Plaintiffs' Exhibit # 2 justifies all of her actions in regards the conduct of the sale. This is an instrument in defendant's handwriting and signed by plaintiffs dated September 29, 1965, which reads:

This is to state that I will accept from the proceeds of the sale of the house at 1505 N.

35th Street the amount of eleven hundred and fifty dollars. This amount is to be held by Mrs. Friedlander in her escrow account and used toward the purchase of house at 3510 Griffin Ave., Richmond, Va.

It is defendant's contention that this instrument conferred upon her the authority to sell the house upon any terms she desired so long as the sale netted $1,150.00 to plaintiffs. Plaintiffs admit signing the instrument but say that they understood this to be merely an authorization to defendant to apply $1,150.00 of the proceeds of the sale to their new home. Were defendant dealing at arms length with persons of average intelligence and under no handicap this position might be tenable. Bernice Jones is, and was at the time, almost blind and William, with a third grade education, could not read. While she read the instrument to them both plaintiffs deny that the purport of the writing was explained to them other than that it was an authorization to defendant to withhold $1,150.00 of the proceeds of sale to be applied upon the new home. Nor, indeed, were the parties dealing at arms length but rather on the basis of a fiduciary relationship. 3 Mich. Jur., *Brokers*, § 13, p. 522.

Fraud is not charged nor does the Court find that defendant was actually acting in bad faith. It is rather apparent from the evidence, however, that defendant, motivated by the prospect of two sales, and in all fairness to her, motivated as well, perhaps, by a desire to accomplish what she thought was the paramount aim of the plaintiffs (i.e. to produce enough net from the sale of the 35th Street property to meet the down payment upon the new home) deviated drastically from her authorized powers in the handling of the sale with detrimental results to the plaintiffs. Having breached her duties in this respect, she will be required to make good to the plaintiffs the difference between the face value of the note and the amount at which it was discounted or $1,812.01.

More difficult of determination is the question of whether, under the circumstances of this case, the Court *must* hold the defendant's commissions to have been forfeited or whether the Court can, where no fraud is shown, award damages to the vendor for loss occasioned

by an act which, while well intentioned, is contrary to the interests of the vendor without forfeiting the broker's commission. There is ample authority for the proposition that departure by the broker from the terms of his instructions is *ground* for forfeiture. 8 Am. Jur., *Brokers*, sec. 142; 1 *Mechem on Agency* (2d ed.) sec. 1593. Furthermore, the general rule appears to be that even though the broker be not actually acting in bad faith, the rule remains the same. 1 *Mechem on Agency*, sec. 1589. The author, in *Mechem*, justifies this harsh rule thus:

> It is not an excuse in these cases that the disloyal agent was not really acting in actual bad faith, or that the principal has not been injured. The rule rests, as has often been pointed out, not upon injury to the principal, but upon the paramount policy of removing the danger of temptation from the pathway of the agent. It may often operate to give to the principal the benefit of the agent's service without any compensation, but the agent has only himself to blame if that result ensues. It may seem at times that the penalty is harsher than the actual offense justifies, but the answer which is given is that the law is not aiming at the particular case but is striking indifferently at the whole class.

Where, however, we are dealing with disobedience to instructions rather than disloyalty there appears to be some latitude which may be exercised at the Court's discretion. *Mathews v. Industrial Lumber Co.*, 91 S.C. 568, 75 S.E. 170 (1912).

Under the peculiar circumstances of the case at bar the defendant will not be held to have forfeited her commission.

Judgment will accordingly, be entered for plaintiffs for $1,812.01.