# Richmond.

## SMITH v. TATE.

DECEMBER 9th, 1886.

Absent, LEWIS, P.

1. LANDS—*Sales—Agents.*—Authority to sell land implies authority to do everything necessary to complete the contract and to make it binding. *Yerby* v. *Grigsby*, 9 Leigh, 390.
2. IDEM—*Covenant—Performance—Evidence.*—Covenant that plaintiff, as agent authorized to sell defendant's tract of land, shall have commission, if he sells same at not less than $20,000, whether it contained 400 acres or 500, is not performed by a conditional verbal sale, not binding on the purchaser, on condition that the tract on survey shall contain not less than 400 acres exclusive of certain mountain land constituting part of it.
3. IDEM—*Owner's default—Damages in lieu of commission.*—Owner's failure to have the land surveyed does not excuse agent's failure to make a binding contract of sale, and entitle him to damages in lieu of commission, when the authority to sell expressly empowered agent to have the survey made himself at the owner's expense.
4. IDEM—*Extension of agency—Evidence.*—Where, by the terms of the agreement set out in declaration, the agency expires on a day certain, a letter of principal written *after* that day declining to extend the agency, is not admissible in evidence in behalf of the agent, though it was in response to letter of agent written during the agency, saying he could have completed the sale of the land but for principal's delay to have the land surveyed ; and that he could still complete it if his agency was extended ninety days, and asking for such extension.
5. PRACTICE AT COMMON LAW—*Verdict contrary to instructions.*— Though verdict be contrary to instructions, yet, if there was no evidence to prove the case supposed by them, it will not be set aside.

Argued at Wytheville. Decided at Richmond.

Error to judgment of circuit court of Smyth county, rendered 29th April, 1885, in an action of covenant wherein C. T. Smith was plaintiff and Thomas G. Tate was defendant.

The object of the action was to recover damages instead of commissions agreed on in event plaintiff made sale of defendant's land, the completion of the sale being alleged to have been prevented by defendant's failure to have the land surveyed and refusal to extend the agency.

The action was founded on the following contract under seal, entered into between the parties on the 26th day of April, 1882:

"This article of agreement witnesseth, that Thomas G. Tate has this day employed C. T. Smith to sell the river tract of land in Smyth county, Virginia, on the following terms and conditions, to wit: The said land is known as the Poston place and contains, say from four hundred and fifty to five hundred acres in all, which includes several different surveys, the whole to be surveyed and plotted to suit the purchaser at the expense of said Tate. For the entire tract of land, whether the same shall contain four hundred acres or more, or five hundred acres, more or less, the said C. T. Smith, agent, is authorized to take *not less than* twenty thousand dollars, one-third of the money to be paid on the 1st January, 1883, at which time full possession shall be given, and a deed with general warranty be executed to the purchaser, reserving vendor's lien for the residue of the purchase money, which shall be paid, with interest from said date, in two equal annual installments. But in the event of a sale on the aforesaid terms, the minerals together with the customary mineral rights and privileges to mine out, and get the same off the premises, are to be reserved on the lower part of the farm that is now occupied by J. M. Pratt, and bounded as follows: Beginning in the

middle of Holston river, or about it, at the mouth of Beaver creek and running down said river and with the middle of it, as near as may be to Dr. Watson's line; then with said Tate's lines back to the mouth of said creek. Said Tate shall get possession by legal steps as soon as possible of the premises now occupied by John Poston, his sister and niece, and if he fails to do so by January 1, 1883, he is to press for same at his own expense until successful, and there shall be no claim on said Tate by the purchaser for damages on account of any delay of possession to said premises arising from any such suit against said Postons for said possession. This authority shall last until September 1, 1882, and if said Smith sells said property, or any part of it, except the minerals reserved, he shall receive five per cent. commission on the purchase money, to be paid him out of the cash payment, and if a sale is made of said property, or any of it except said minerals reserved, by any other person before September 1, 1882, then said Smith shall be entitled to only two and one-half per cent. (2½) commission, to be paid him out of the cash payment. Said C. T. Smith shall (and is hereby so authorized) sell said reserved minerals, together with the customary rights and privileges to mine out and move the same from the said premises for ten thousand dollars, not less, on the same terms as to payments named *above* as to the land. Said Smith shall have until November 1, 1882 to sell the said reserved minerals and the rights and privileges thereof, and be entitled to receive for his commission for selling the same, one-fourth (¼) of the price obtained, to be received proportionately out of the several payments—the purchaser of any of the said properties to have the right to pay all the purchase money down, or the deferred payments in full or in part at any time before the maturity thereof, and interest to cease accordingly. Witness our hands and seals, April 26, 1882, THOMAS G. TATE [Seal], C. T. SMITH [Seal]."

The suit is for the alleged breach by the defendant of the covenants contained in said agreement. The declaration contains but one count, and avers that in pursuance of the said agreement the said plaintiff exerted himself to sell said land and plaster, and was at great trouble, expense and loss of time to perform said contract on his part, and that he did well and truly perform it according to the true tenor and effect thereof, as far as it could be done without performance on the part of said defendant.

And it is further averred, that the plaintiff, "in pursuance of said agreement, before the first day of September, 1882, sold the said tract of land to one C. D. Carter, at the price of $20,000, payable one-third on the first day of January, 1883, when full possession was to be given according to said agreement, the residue in two equal annual installments, bearing interest from the first day of January, 1883, reserving the plaster with customary mining rights and privileges, in accordance with the limitations and terms in the contract sued on. The said sale to Carter being conditioned, however, upon the requirement by Carter that the said Thomas G. Tate should have the lands surveyed, and that there should not be less than 400 acres of said lands, exclusive of about sixty acres of of mountain lands on Brushy mountain, a part of the boundary included in said agreement."

And the plaintiff next avers,. "that the said boundary of land does include not less than 400 acres, exclusive of said mountain land, and that the said sale to Carter would have been made an absolute and complete sale if the said Thomas G. Tate had had the lands surveyed or had permitted the plaintiff to have them surveyed at the expense of the said Thomas G. Tate, as by the tenor and effect of his said agreement he was bound to do."

And for breach, the plaintiff avers "that early and timely

notice of said sale was given by the plaintiff to the defendant, and the defendant was repeatedly and strenuously urged by the plaintiff to have said surveys made, or to permit them to be made, but the defendant wholly failed and refused to do so, and thereby through his neglect, failure and refusal to perform the contract on his part, he prevented the plaintiff from making the said sale to Carter absolute and complete."

And it is further averred in the declaration that afterwards, to wit: on the 11th day of October, 1882, at the county aforesaid, the defendant formally dismissed the plaintiff from the agency created by the said covenant, or rather, refused to continue it in the following figures and words, to wit:

"LONG HOLLOW, October 11, 1882.

"CAPT. C. T. SMITH, Marion, Virginia:

"Dear Sir,—Your postal from Lovingston to hand. I went to Saltville to see you, but you were away. I have consulted with Capt. Shannon, and he advises me not to continue my place in the hands of an agent; it is more than probable that I'll take possession myself. With many thanks for the efforts you have made to sell, I am, very truly, yours,

"T. G. TATE."

And this is the second breach alleged. The declaration contains other averments, but they are immaterial, and are more in the nature of arguments than otherwise. And by reason of the said alleged breaches of the covenants aforesaid the plaintiff claims that he is damaged in the amount of $2,000.

The defendant demurred to the declaration, and the court overruled the demurrer, and thereupon issue was joined upon the defendant's plea of covenants not broken.

At the trial, the plaintiff took six several bills of exception to rulings of the court rejecting evidence offered by him. The jury found for the defendant; and thereupon the plaintiff moved the court set aside the verdict and grant him a new trial, but the court overruled the motion, and the plaintiff again excepted; and this is the plaintiff's bill of exceptions, No. 7, in which all the evidence adduced at the trial is set out. And thereupon the court gave judgment for the defendant in accordance with the verdict of the jury. The case is here on a writ of error.

*J. P. Sheffey* and *D. C. Miller*, for plaintiff in error.

*Buchanan & Buchanan*, for defendant in error.

RICHARDSON, J. (after stating the case), delivered the opinion of the court.

Though amplified by numerous bills of exception, the question to be determined by this court is within a very narrow compass. It is simply whether, in view of the contract between the parties and the evidence adduced before the jury, the plaintiff is entitled to recover. There could be no difficulty in answering this question negatively, as the jury answered it, if the trial court did not err in the rulings excepted to at the trial.

At the trial the plaintiff introduced in evidence, without objection by the defendant, the said agreement between the parties of April 26, 1882, upon which the action was founded, and then introduced a witness, W. W. George, and asked him this question: "State if you met C. T. Smith and C. D. Carter at your barn lot in May, 1882, at which time and place C. D. Carter was negotiating with C. T. Smith, as agent for Thomas

G. Tate, for the purchase of his land; state when it was and what passed between them"? But the defendant, by his counsel, objected to the answering of the question by the witness, upon the ground that proof of a verbal contract of sale by the plaintiff to C. D. Carter is not admissible under the plaintiff's declaration. Whereupon, the plaintiff, by counsel, avowed that he expected to prove that at the time referred to in the question he sold the defendant's said land to C. D. Carter by a verbal contract for $20,000, according to the terms of the covenant sued on, provided the survey should be made, and upon the survey being made, the land should contain four hundred . acres exclusive of the mountain land; and that the writings were to be drawn as soon as the survey should ascertain that fact; and that C. D. Carter was able to comply with his contract, and intended to do so, and would have done so, and that defendant was informed of this verbal sale, and promised to have the survey made, but refused to allow any one but James S. Greever to make the survey; that Greever was so situated as to be unable to make the survey, of which fact the defendant had notice; and that by refusing to allow any other surveyor to make the survey, the defendant prevented the plaintiff from making the sale to C. D. Carter absolute and complete; and that the Poston land contained four hundred and fifty-nine acres and one hundred poles, exclusive of the mountain land, as established by subsequent surveys. But the court, being of opinion that a verbal contract of sale to C. D. Carter by the plaintiff, as agent for the defendant, could not have been enforced by the defendant (Tate) against Carter *in invitum*, and that Tate was not bound to accept him as a purchaser under the covenant sued on, until he had executed such contract in writing as the defendant could enforce, thereupon sustained the defendant's objection, and refused to allow the witness to answer the said question; to which ruling the plaintiff excepted, and this is the plaintiff's bill of exceptions, No. 1.

It is clear that this exception is not well taken. The contract of sale averred in the declaration and sought to be established by the evidence thus rejected by the trial court, was a verbal contract within the statute of frauds, and could not have been enforced by the defendant, Tate, against the alleged purchaser, Carter, even though upon the faith of such verbal agreement, the defendant, Tate, had chosen to incur the risk and expense of having the land "surveyed to suit the purchaser," as provided in the written agreement upon which the action was founded. Our statute (ch. 140, sec. 1, Code 1873) declares that no action shall be brought "upon any contract for the sale of real estate, unless the contract or some memorandum or note thereof, be in writing and signed by the party to be charged thereby, or his agent." And conceding, for the sake of the argument, that it is true, as averred in the declaration and offered to be proved, that there was a *conditional* verbal agreement of sale to Carter; that such conditional sale was within the terms of the agreement in writing which authorized the plaintiff to sell the defendant's land; that the defendant was by the plaintiff promptly notified of such agreement of sale; that the tract contained the quantity of land, exclusive of the mountain land, stipulated for by Carter; and that he, had the survey been made, would have made the agreement absolute and binding, and was willing and able to do so, as averred; yet it is obvious that the failure so to render the agreement absolute, is referable to the failure of duty, or negligence, of the plaintiff himself. For he was authorized by the agreement of April 26th, 1882, that upon which the action was founded, to sell the land at not less than $20,000, upon the terms therein stated, reserving the minerals, &c. Being thus constituted agent and authorized to make the sale, he had authority to execute such writing, or enter into such written agreement as might be necessary; for the author-

ity to sell implies an authority to do everything necessary to complete the sale and make it binding. *Yerby* v. *Grigsby*, 9 Leigh, 390, and authorities there cited. In that case, Parker J. said: "It is on this principle that an auctioneer empowered to sell, has always been held to be the agent of the vendor empowered to sign. In no one of the cases has it ever been required, that an express authority to sign should be superadded to the authority to sell." It is true that the agreement between the parties provided that the whole tract, composed of several different surveys, should be "surveyed and plotted to suit the purchaser at the expense of the said Tate;" but this can by no means be construed either to reserve the right, or to impose the duty upon, the defendant, Tate, of superintending the surveying and directing by whom it should be done. He had to foot the bill—that was all. The surveying was one of the things essential to the completion of the contract, and for reasons already stated the plaintiff not only had ample authority to employ a surveyor and have the survey made at the expense of the defendant, but it was his duty to do so. Therefore, the argumentative averment that the alleged conditional sale by the plaintiff to Carter was prevented from becoming absolute by the refusal of the defendant to permit any one except John S. Greever to make the survey, is not only inapt, but in the teeth of the argument upon which the action is based.

Moreover, had the alleged conditional contract of sale between the plaintiff and C. D. Carter even been in writing, the defendant could not have been required to accept and act upon it, because it contained the stipulation in Carter's behalf that bound him only in the event the tract of land, when surveyed, should contain *not less* than 400 acres *exclusive of the mountain land*, while the agreement authorized no such conditional sale, but expressly authorized the sale of the whole at *not less* than $20,000, whether it contained four hundred acres

or more, or five hundred acres, more or less. It is therefore obvious that if the defendant, Tate, had accepted said Carter as purchaser and, on being surveyed, it had turned out that there was in the tract of land less than 400 acres, exclusive of the mountain land, Carter would not have been bound, and the defendant, Tate, would have been saddled with the costs of a useless and expensive survey. So much for the first breach averred in the declaration. It is clear that the plaintiff is not entitled to recover damages in lieu of the commission stipulated for on his behalf in the event of a sale by him prior to the 1st day of September, 1882, and in this respect we find no error in the ruling of the court below.

The plaintiff's exceptions, Nos. 2 and 3, are to similar rulings of the trial court rejecting evidence offered to sustain said first alleged breach. It is useless to notice them further than to say the court below ruled correctly in each case.

The plaintiff's bill of exception No. 4, is to the action of the court refusing to permit the said letter of the defendant to the plaintiff, dated "Long Hollow," October 11th, 1882, declining to continue his land longer in the hands of the plaintiff, as agent, for sale, except as to the second breach laid in the declaration.

There was certainly no error in this ruling prejudicial to the plaintiff. If any error was committed, it was in permitting the letter to go in evidence for any purpose. It certainly does not even tend to prove said second breach as laid, which is, that the plaintiff was dismissed from the agency created by the agreement between the parties. It is impossible to give to the defendant's said letter any such effect. The agency as to the land had expired, and the letter was written by the defendant in answer to a letter to him, written by the plaintiff just a few days prior to the expiration of the agency as to the land, asking for an extension of the period of the agency, which the

defendant by said letter declined.    The letter has no reference to the authority to sell the minerals, the agency as to which extended to the 1st of November, 1882.    The question as to the agency to sell the minerals could not be affected by that letter, nor is it in any way involved in this suit.

The plaintiff having thus given in evidence the agreement of April 26th, 1882, and the said letter of the defendant of the 11th of October, 1882, and the court having refused to admit certain other evidence offered by him, and referred to in his six previous bills of exception, rested his case; and the defendant, to sustain the issue on his part, read to the jury the following correspondence, consisting of a postal card and letters from the plaintiff to him, in the words and figures following, to wit:

"SALTVILLE, VA., August 23d, '82.
"THOS. G. TATE, Esq.,

"Dear Sir,—Owing to the failure on your part, aided by my persistent efforts to get your land surveyed, I have been unable to sell it; and if it had been surveyed, as called for in the contract between you and me, I am quite sure I would have sold it.    So neither of us are to blame for results.    Monday last, in Marion, I saw General Greever for the fourth time about it, and he regretted that he had been unable to make the survey, but said he would do it early in September.

"My authority to sell your land expires the 1st September, but I think, under the circumstances, especially as I have found five persons who want parts of it, and two who will buy the whole, I think you will not hesitate to give me until December 1st to complete or try to complete the sale of it on the same terms set out in our contract.    The time lost in trying to get the survey made is as much as ninety days, which is the extension of time I ask, in justice to me, of our contract

as to the land.   I could not sell until this survey was made, and every possible effort has been made to get the surveying done, and you were to have it done—not myself.   Still, I tried hard to ——— the job done in time, but failed.   I have stated this matter fairly, and will be glad to have a *prompt acquiescence* in the form of a letter, to my proposition, so that I may go ahead with what I have undertaken for you.   Yours truly, C. T. SMITH."

"LOVINGSTON, VA., October 4, 1882.

"THOS. G. TATE, ESQ., Long Hollow, Smyth county, Virginia:

"Dear Sir,—If you have not answered my letter definitely at Saltville, please do so to me at Marion, as I will be there next week, and wish to know if you will grant what I think I am entitled to.   Very truly, C. T. SMITH."

"At CAPT. BROWN'S, Nov. 12, 1882.

"THOS. G. TATE, ESQ.,

"Dear Sir,—Where can I see you to-morrow?   I would like to see you and Capt. Shannon together, and if you are going there to-night, I will come there to-morrow or the next day as may best suit your convenience.   I read your letter declining to extend my authority to sell your land, and did not answer it because I preferred to see you and him together in regard to it, especially as I know it is to your interest that we shall have a conference.   Yours truly, C. T. SMITH.

"P. S.—Let no one see this or know of it except Capt. Shannon.   C. T. S."

And here the defendant rested.   Such being all the evidence, that is, on behalf of the plaintiff, the contract of April 26, 1882, set out in the plaintiff's bill of exceptions No. 1. and the letter of the defendant of October 11, 1882, set out in plain-

tiff's bill of exceptions No. 2; and on behalf of the defendant, the said postal card and letter of the plaintiff to the defendant, the plaintiff asked for and the court gave, the following instruction to the jury: "The court instructs the jury that if they believe from the evidence that the defendant dismissed the plaintiff from his employment, as agent, on October 11th, 1882, then the defendant violated his contract, and the jury must find for the plaintiff."

In strictness, this instruction should have been refused, as there was not a particle of evidence tending to prove the case supposed in the instruction. However, the jury found for the defendant, and thereupon the plaintiff moved the court to set aside the verdict and grant him a new trial, on the grounds that the verdict was contrary to the law and the evidence, and because of the erroneous rulings of the court in excluding testimony offered by the plaintiff. But the court overruled the motion, and the plaintiff again excepted; and this is the plaintiff's bill of exceptions, No. 7, in which all the evidence given at the trial, and also that offered by the plaintiff and rejected by the court, as set forth in the previous bills of exception, is set forth or referred to.

The evidence has already been stated in full, and there can be no use in repeating it here. It is perfectly clear that the court below did not err in refusing to set aside the verdict and grant a new trial. The only question involved was as to the liability of the defendant by reason of the alleged breach by him of the covenant in the agreement between the parties of April 26, 1882, in respect to the sale of the defendant's land by the plaintiff. The agreement expired on the 1st day of September, 1882. Just before its expiration the plaintiff, in his letter written at Saltville and dated 23d of August, 1882, says: "Owing to the failure on your part, aided by my persistent efforts to get your land surveyed, I have been unable to sell it;

and if it had been surveyed, as called for in the contract between you and me, I am quite sure I would have sold it. So neither of us are to blame for results." And he adds: "My authority to sell your land expires the 1st September." Then he proceeds, in the same letter, to ask for an extension of ninety days, and urges reasons why he should have the extension; says he could not sell the land until the survey was made, and that every *possible effort* has been made to get the surveying done; and that the defendant was to have it done, not the plaintiff. We have seen that in respect to the surveying the contract of agency fully authorized the plaintiff to proceed and have the surveying done, the only requirement as to the defendant being that it should be at his expense. But there stands out the plaintiff's admission, "So neither of us are to blame for results."

On receiving this letter from the plaintiff the defendant went to Saltville to see him, but he was gone. Then, on the 4th of October, 1882, the plaintiff wrote from Lovingston, Va., to the defendant in Smyth county, saying: "If you have not answered my letter definitely at Saltville, please do so to me at Marion, as I will be there next week, and write to know if you will grant what I think I am entitled to."

The plaintiff's authority to sell the defendant's land had then expired by over one month, and in a few days the defendant answered (see his letter of 11th October), declining the plaintiff's proposition for an extension of time as to the land, but saying nothing as to the minerals, which was a distinct matter. These facts show that the agency was up and done with, and that the land had not been sold during the continuance of the agency, and the plaintiff's admission that neither he nor the defendant was to blame for the failure. Yet in the face of these unbending facts and admissions, the plaintiff brings this suit and avers in his declaration, first, that he well and truly

on his part kept and performed the covenants, in the said agreement of April 26th, 1882, contained; that he did in pursuance of said agreement, and prior to the termination of the authority thereby conferred, enter into a *verbal conditional* agreement with one C. D. Carter for the sale of said land at the price of $20,000, and that said sale would have become absolute and complete but for the failure of the defendant to perform his duty by having said land surveyed, as by the said covenant he was bound to do; and second, that the defendant by his said letter of October 11th, 1882, wrongfully dismissed the plaintiff from said agency and thereby prevented him from making sale of said land. Such substantially are the two breaches laid in the declaration. It has been shown in considering the plaintiff's exceptions that the agreement upon which the action is founded gives no countenance to either of the breaches as laid. It is useless to repeat the agreement here. There is no error in the judgment of the court below, and the same must be affirmed with costs to the defendant in error.

JUDGMENT AFFIRMED.