# Richmond.

## G. K. Seergy v. Morris Realty Corporation,
### ET ALS.

March 20, 1924.

Absent, Kelly, P., and Burks, J.

1. BROKERS—*Real Estate Brokers—Broker's Compliance with Terms of Authority—Case at Bar.*—In the instant case a broker was authorized by a landowner to sell the land in question at a certain price for cash, subject to all loans and leases.

   *Held:* That the broker was not authorized to execute and bind the owner by a contract of sale for $250.00 cash, balance in thirty days, the contract containing no provision that the sale was made subject to the loans and leases.

2. BROKERS—*Real Estate Brokers—Special Agent.*—A real estate broker who is authorized to sell property at a fixed sum for cash, subject to loans and leases, is a special and not a general agent.

3. AGENCY—*Special Agent—Authority.*—The authority of a special agent must be strictly pursued, and if it is not, the principal will not be bound.

4. AGENCY—*Special Agent—Authority.*—Any one dealing with a special agent must inquire and look to his authority. If the agent has exceeded his authority, he who dealt with him has done so at his peril.

5. AGENCY—*Special Agent—Authority.*—A special agent's authority is deemed to be limited to that which is expressly given or necessarily implied.

6. BROKERS—*Real Estate Brokers—Authority—Binding Owner by Contract of Sale.*—A real estate broker or agent is defined to be one who negotiates the sale of real property. His business generally is only to find a purchaser who is willing to buy the land upon the terms fixed by the owner. He has no authority to bind his principal by signing a contract of sale. A sale of real estate involves the adjustment of many matters besides fixing the price.

7. BROKERS—*Real Estate Brokers—Authority—Binding Owner by Contract of Sale.*—Of course a real estate broker, like any other special agent, may be authorized by his principal to sign a contract of sale of real estate which will bind the principal, provided the terms of the au-

thority are such that they, expressly or by necessary implication, definitely determine all the matters involved in the performance of the contract of sale in question, so that no detail which is essential to the performance of the contract is left by the authority unsettled, to be adjusted by subsequent agreement of the owner and purchaser.

8. BROKERS—*Real Estate Brokers—Authority—Binding Owner by Contract of Sale—Case at Bar.*—In the instant case the president of a corporation wrote a real estate broker that the corporation had decided that the best and only price which it could take for certain of its property was a certain cash sum; that this price was subject to all loans and leases, and that the president had authority to close the deal, concluding with the request that the broker should not come back with any other offers. The letter was silent as to many details essentially involved in the sale, these matters being left unsettled, to be adjusted by subsequent agreement of the owner and the purchaser.

   *Held:* That the letter did not authorize the broker to execute a contract of sale, but only to find a purchaser.

9. BROKERS—*Real Estate Brokers—Contract of Sale—Meeting of Minds of Contracting Parties.*—Where the evidence failed to show that the minds of the owner and purchaser ever met upon all of the essential particulars of a contract of sale executed by a real estate broker for the owner, the owner is not bound by the contract.

10. SPECIFIC PERFORMANCE—*Contracts—Meeting of Minds.*—In a suit for specific performance, where the court is unable, from all the circumstances of the case, to say whether the minds of the parties met upon all the essential particulars of the contract, specific performance will be refused.

Appeal from a decree of the Law and Chancery Court of the city of Norfolk. Decree for defendant. Complainant appeals.

*Affirmed.*

The appellant, G. K. Seergy, filed his bill to compel the appellee, the Morris Realty Corporation, to specifically perform a certain contract in writing for the sale of the real estate therein mentioned, belonging to the said appellee. The contract, so far as material to be stated, is as follows:

"Received of George K. Seergy two hundred and fifty ($250.00) dollars on account of the purchase price of sixteen thousand ($16,000.00) dollars for the four

brick houses Nos. 615-617-619-621 Freemason street, Norfolk, Virginia, next to Church street, owned by * * * Morris Realty Corporation. All taxes, insurance and rents to be prorated to date of transfer of deed, within thirty days from date.

(Signed) "A. E. Burruss, Agent
for * * * Morris Realty Corporation."

The said appellee refused to perform this contract, on the ground that the said Burruss had no authority to bind the appellee by this contract of sale.

The appellant relies on a certain letter from Harry Morris, the president of said appellee, written in New York city, to the said Burruss, who was a real estate agent in Norfolk, Va., as giving the authority to the latter to bind said appellee by said contract. This letter, so far as material, is as follows:

"3/10/19.

"Mr. A. E. Burruss,
        "Norfolk, Va.
"Dear Mr. Burruss:

"In reply to your letter 3/6 that was forwarded to me in New York wish to say that one week ago a meeting of the stockholders of the Morris Realty Company was held and we decided that the best and only price that we could make our property was * * * four houses in Freemason street, sixteen thousand dollars ($16,000.00). These prices" (referring to the price just mentioned and also to another price on another piece of property mentioned in the letter which is not material to the instant case) "*are subject to all loans and leases*, and we will allow the regular commission on these prices. Now as all stockholders have agreed on these prices *I have the*

*authority to close the deals,* but *don't come back with any other offers* please, as this is final.    \*   \*   \*   Rental. \*   \*   \*   Freemason street $120.00 per month.   *Let me hear from you soon,* as I may leave here next week. *Address me* care Hotel Royal, 535 West 112th street,. New York City.

"Yours truly,

(Signed) "Harry Morris."

(Italics supplied.)

It appears from prior correspondence in evidence· that it was mutually understood both by the writer of the letter just quoted and its addressee, the real estate agent, that the $16,000.00 price stipulated in the letter· was to be paid all cash (as to this there is no contro-- versy), so that the letter must be read as if it expressly· stipulated as tô the terms of sale that the purchase money should be $16,000.00 to be paid all cash.

The evidence is to the effect that the appellant pur-chaser Seergy, in the transaction, dealt solely with said real estate agent without inquiry as to, but presuming· that the agent had authority to make the sale in ac-- cordance with the terms of said contract of sale signed by the agent, and that the appellant has been at all. times willing, ready and able to pay for and to take the property in question "in pursuance of the agreement" (the said contract).   Further:   That after the owner, the said appellee, refused to perform such contract, as aforesaid, the appellant purchaser, Seergy, upon his call. upon the agent for evidence of the authority of the lat-ter to sell the property according to the stipulations con-tained in said contract, was shown the said correspond-ence, including said letter from Harry. Morris, and the position of the appellant purchaser, as taken in his bill, in his testimony and in argument in his behalf on the

appeal, is that the letter last mentioned, when read as if it expressly stipulated that the terms of sale should be $16,000.00 to be paid all cash, along with the other stipulations expressly set forth in the letter, authorized the said agent to execute and to bind the said owner by said contract of sale.

The evidence is to the further effect that there were loans which were encumbrances upon, and leases of the property in question, outstanding at the time said contract was signed by said agent. The evidence is silent as to the total amount of the encumbrances, as to when they matured, and also as to when the leases terminated. Nor does it appear from the evidence that the purchaser was, before or at the time said contract was signed by the agent, informed by the agent that there were loans and leases outstanding as aforesaid, or that the sale was made "subject to all loans and leases," or that the particulars as to how the loans and leases were to be adjusted were ever considered or agreed upon, even between the agent and the purchaser.

The decree under review dismissed the bill of the appellant, the effect of which was to hold that the appellee owner was not bound by the aforesaid contract of sale made by the agent.

*Cole & Cole*, for the appellant.

*Jas. G. Martin & Bro.*, and *Oast, Kelsey & Jett*, for the appellees.

Sims, P., after making the foregoing statement, delivered the following opinion of the court:

There are a number of assignments of error, but it will be necessary to consider only a single question pre-

sented thereby, as the determination of that question is decisive of the case. That question is as follows:

[1] 1. Did the letter of Harry Morris, the president of the appellee owner of the property involved in this suit, to the agent, Burruss, authorize the latter to execute and bind the said owner by the contract of sale to the appellant, consisting of the memorandum in writing signed by said agent, which is set forth above?

The question must be answered in the negative, on two grounds.

[2-4] First: The aforesaid agent was a special, not a general agent. (*Chapman* v. *Jewett*, 2 Va. Dec. 336, 24 S. E. 261; *Halsey* v. *Monteiro*, 92 Va. 581, 24 S. E. 258; *Crews* v. *Sullivan*, 133 Va. 478, 113 S. E. 865.) In such case the established rule is that the authority of the agent "must be strictly pursued, and if it is not, the principal will not be bound" (1 Mechem on Agency, 2d ed., sec. 742; See also to same effect the cases just above cited); and "any one dealing with such an agent must inquire and look to his  *  *  *  authority. If the agent has exceeded his authority, he who dealt with him has done so at his peril." *Chapman* v. *Jewett, supra;* and *Halsey* v. *Monteiro, supra.*

The contract of sale signed by the agent, involved in the instant case, did not strictly pursue the authority of the agent contained in the letter in question, but departed therefrom, certainly in two material particulars. The letter stipulated that the terms of sale should be $16,000.00 to be paid all cash; and that the sale should be made at that price subject to all loans and leases. By the contract of sale, with the exception of the payment of $250.00, the appellant purchaser was given thirty days time within which to pay the purchase money; and there was no provision in the contract of sale that the sale was made subject to all loans and

leases. Hence, the sale not having been made by the special agent strictly in accordance with his authority, we must hold, under the established rule above mentioned, that the owner was not bound by the contract of sale. Therefore, on this ground, the decree under review was plainly right.

There is nothing in the cases of *Yerby* v. *Grigsby*, 9 Leigh (36 Va.) 390; *Smith* v. *Tate*, 82 Va. 657; *Ford* v. *Street*, 129 Va. 437, 106 S. E. 379, or *Crotty* v. *Effler*, 60 W. Va. 258, 54 S. E. 346, 9 Ann. Cas. 770, relied on for appellant, in conflict with the conclusion just stated.

In *Yerby* v. *Grigsby*, the court held, at pages 388-9 of the aforesaid report of the case, that "the evidence established that John Green" (the agent) "was authorized by Charles" (the owner) "to *make such a contract as was made*" (by the agent) "with the complainant" (the purchaser). (Italics supplied.) So that the agent in that case made the sale strictly in accordance with his authority.

In *Smith* v. *Tate*, the evidence showed and the court held that the sale by the agent was made strictly in accordance with his authority.

The cases of *Ford* v. *Street* and *Crotty* v. *Effler* do not involve any variance between the terms of the authority of and the contract made by the agent; and, hence, neither of these cases is in point.

[5, 6] Secondly: A special agent's authority is "deemed to be limited to that which is expressly given or necessarily implied. 1 Mechem on Agency, sec. 799. As said in *Halsey* v. *Monteiro*, *supra*, at pages 583-4, (24 S. E. 259): A real estate broker or agent is defined to be one who negotiates the sale of real property. His business generally is only to find a purchaser who is willing to buy the land upon the terms fixed by the owner. He has no authority to bind his principal by

signing a contract of sale. A sale of real estate involves the adjustment of many matters besides fixing the price. The delivery of possession has to be settled, the title examined, and the conveyance with its covenants to be agreed upon and executed by the owner—all of which require conference and time for their completion. They are for the determination of the owner and do not pertain to the duties and are not within the authority of a real estate agent. For obvious reasons, therefore, the law wisely withholds from him any *implied authority* to sign a contract of sale in behalf of his principal." Citing numerous authorities. (Italics supplied.)

[7] This, of course, does not mean that a real estate agent, like any other special agent, may not be authorized by his principal to sign a contract of sale of real estate which will bind the principal, provided the terms of the authority are such that they, expressly or by necessary implication, definitely determine all the matters involved in the performance of the particular contract of sale in question, so that no detail which is essential to the performance of the contract is left by the authority unsettled, to be adjusted by subsequent agreement of the owner with the purchaser.

Accordingly, in *Halsey* v. *Monteiro, supra,* where merely the description of the real estate, the price and terms at which the agents were authorized "to list" and "place the farm," *i. e.,* to sell the property, and the agreement to pay the agent a "liberal commission" if he made the sale, were embraced in the terms of the letter relied on as authorizing the agent to execute the contract of sale—it was held that "a simple inspection" of the letter "showed that" it only empowered (the agents) to find a purchaser for the land. That "no power whatever (was) conferred upon them to sign a contract of sale".

We think that it is equally plain, from an inspection of the letter relied on in the instant case as authorizing the agent to execute the contract of sale, that it only empowered the agent to find a purchaser for the property. The terms of the letter clearly indicate that the writer of it was to "close the deal" and that the agent's authority was confined to obtaining and reporting an "offer" of purchase in accordance with the terms of the letter. The agent is expressly directed not to "come back *with any other offer.*" And the letter is silent as to many of the details essentially involved in the performance of the contract at the time of its completion, such as the adjustment of the outstanding encumbrances upon and of existing leases of the property, of the time of the delivery of the deed and possession, etc. These matters were left unsettled by the letter, to be adjusted by subsequent agreement of the owner with the purchaser. It is true that in the contract of sale signed by the agent he attempted to settle some of those matters, such as the time of the delivery of the deed, and, by inference, the time for the delivery of possession. But he was not authorized by the letter to do this. Those matters, therefore, notwithstanding such action of the agent, remained unsettled to be adjusted by subsequent agreement as aforesaid. And the adjustment of the outstanding encumberances and leases aforesaid was not even attempted by the agent—they were not mentioned in the contract which the agent signed, nor to the purchaser outside of the contract, nor were the particulars as to how the loans and leases were to be adjusted ever considered or agreed upon by the agent and the purchaser; nor does it appear, so far as shown by the evidence, when the loans were due and payable, or that they were only of such a total that they could have been discharged by the

purchase money or that the leases terminated at such a time that the possession of the property could have been delivered even at the expiration of the thirty days, the time fixed in the contract signed by the agent (without authority as aforesaid) for the completion of the contract.

As may be stated in another way, to say the least on the subject, the evidence fails to show that the minds of the owner and the purchaser ever met upon all of the essential particulars of the contract of sale sought to be enforced in the instant case. In such case it is settled that the owner is not bound by contract of sale sought to be enforced.

As said in *Clinchfield Coal Co.* v. *Powers*, 107 Va. 398-9, 59 S. E. 370, 372: "Where the court is unable, from all the circumstances of the case, to say whether the minds of the parties met upon all the essential particulars * * specific performance will be refused."

The decree under review will be affirmed.

*Affirmed.*