## Richmond.

### D. A. PAYNE, AND OTHERS, v. T. A. JENNINGS.

January 14, 1926.

1. BROKERS—*Real Estate Brokers—Special Agents—Limited Powers—Power to Execute Contract of Sale.*—A real estate agent is generally a special agent of limited powers, and those dealing with him deal at their peril. Usually his only authority is to secure a purchaser who will take the property at a price fixed by the owner. He cannot, unless expressly or impliedly authorized, execute a contract of sale on behalf of his principal.

2. BROKERS—*Real Estate Brokers—Power to Execute Contract of Sale.*—For authority to execute a contract of sale, binding on his principal, the agent must look to his agency contract. Authority simply to sell the property at a price named, leaving all the details of the transaction to be adjusted by the owner, does not include the power to execute a contract of sale. But where the agency contract empowers the agent to sell the property at a price and upon terms set forth therein, and provides what, if anything, shall be done as to the examination of the title, what covenants the conveyance shall contain, when possession shall be delivered, and leaves no material detail unsettled to be thereafter adjusted between the owner and the vendee, the power to sell implies the power to execute a contract of sale in accordance with the terms of his agency contract, which will bind his principal.

3. APPEAL AND ERROR—*Opinion of Court—Construction of Opinion.*—It is a rule of construction that the opinion of an appellate court must be construed in the light of the facts in the particular case.

4. REAL ESTATE BROKERS—*Parol Evidence—Varying and Modifying Agreement Between the Broker and its Principal.*—In a suit by the owner of property to remove a cloud from his title, complainant contended that his agent was not authorized to execute a contract of sale of the property in question, and evidence was taken in effort to establish a contemporaneous agreement between the agent and its principal, by which the agency contract was contradicted. The whole contract between the parties was contained in the written contract. *Held:* That this evidence was improperly admitted.

5. PAROL EVIDENCE—*General Rule.*—No rule of law is better established as a general rule than this—that a written contract, whether under

Opinion.

seal or not, cannot be explained, varied or contradicted by parol evidence.

6. BROKER—*Real Estate Broker—Fraud of Broker—Sale by Broker to Hospital—Case at Bar.*—In the instant case, an owner of property had agreed in writing to convey the property with good title, by general warranty deed, to "any person designated by" a broker with whom he had listed the property. Under these circumstances, the failure of the broker to reveal the name of the purchaser to the owner before he was called upon to sign the contract of sale, or the fact that the contract of sale was entered into with one who would later convey the property to a hospital, did not constitute bad faith on the part of the broker nor work a fraud on the rights of its principal.

7. BROKER—*Real Estate Broker—Power to Execute Contract of Sale on Behalf of Principal—Material Detail Unsettled—Time for Delivery of the Property—Case at Bar.*—In the instant case, the question at issue was whether a real estate broker under its contract with its principal had authority to execute a contract of sale on behalf of the principal which would be binding upon him. The clause in the contract between the broker and its principal touching the delivery of the possession of the property, read "to be agreed."

*Held:* That since the terms of the agency contract left for the future determination of the owner the date of delivery of the possession of the property, which was a material detail in the execution of the contract of sale, the broker was not authorized to enter into a contract of sale in the name of its principal and its principal was not bound thereby.

Appeal from a decree of the Circuit Court of the city of Lynchburg. Decree for complainant. Defendants appeal.

*Affirmed.*

The opinion states the case.

*F. P. Christian, Jr., D. H. Kizer* and *S. H. Williams,* for the appellants.

*Fred Harper,* for the appellee.

WEST, J., delivered the opinion of the court.

. On February 16, 1922, T. A. Jennings, appellee, who resided at the corner of Fifteenth and Federal

streets, in the city of Lynchburg, listed his residence lot and three other adjoining lots for sale with Walker, Mosby & Calvert, Inc., real estate agents. The agency contracts, signed by Jennings, were under seal and in the form generally used by the agents in such cases. There was a separate contract for each lot, and the contract covering the residence lot read, in part, as follows: "In consideration of your listing for sale and endeavoring to sell the real estate described * * * I hereby authorize you to sell the same at the price of $12,000.00. Terms: $3,000.00, balance one, two and three years. Deferred payments to bear interest and be secured by a deed of trust upon the property." The contract gave the agents the exclusive right to sell the property for six months and provided further, "upon your securing a purchaser, ready, able and willing to buy said property at said price and terms, or any other price and terms which I may hereafter accept, or agree to accept, I agree to pay you a commission on the gross price at which the same is sold, or exchanged for other property, of five per cent. on the first $10,000.00 and two and a half per cent. on the balance, and convey or cause to be conveyed with good title, by general warranty deed, said property *to any purchaser designated by you.*" (Italics ours.) The clause touching the delivery of possession of the property read, "to be agreed."

On April 26, 1922, W. E. Graves, president of board of trustees of Marshall Lodge Memorial Hospital, Inc., agreed to purchase the property in his own name upon his own responsibility, at the price and upon the terms above stated, intending to turn his contract of purchase over to the hospital if it wanted the property.

At Graves' request the contract of sale was made in the name of D. A. Payne.

The contract was put in writing, under seal, and executed on April 26, 1922, on behalf of Jennings by his agents, Walker, Mosby & Calvert, Inc., and by D. A. Payne. The contract provides that the party of the first part has sold to Payne, party of the second part, the property mentioned for "$12,000.00, payable $3,000.00 cash on delivery of the deed, balance in equal payments of one, two and three years, deferred payments to bear six per cent. interest from date of deed, secured by deed of trust upon the property." It further provides "that the party of the first part covenants that he will execute a proper deed of conveyance for said property, with the usual covenants of title, whenever the party of the second part complies with the terms of sale as above set forth;" that "the party of the first part acknowledges the receipt of $500.00 on the purchase money," and agrees that the "party of the second part shall have fifteen days from the date hereof within which to have the title of said property examined, and should same not prove good then this contract shall be void, and the money paid as aforesaid shall be returned."

The board of directors approved the action of its president, and it was agreed that Payne was to deed the property to the hospital.

Upon learning that the agents had agreed to sell the property to D. A. Payne, Jennings refused to approve the contract, denied the authority of his agents to make it, and declined to accept the $500.00. Later, when the balance of $2,500.00 was tendered to him on the cash payment he declined to accept it.

On April 28, 1922, Walker, Mosby & Calvert, Inc., had the contract of sale recorded in the clerk's office of the city of Lynchburg.

On the third Monday in April, 1924, T. A. Jennings

filed his bill against D. A. Payne, Marshall Lodge
Memorial Hospital, Inc., and Walker, Mosby & Cal-
vert, Inc., charging that Walker, Mosby & Calvert,
Inc., were without authority under the agency contract
to execute, on his behalf, the contract of sale to D. A.
Payne; that at the time of signing the agency contract
it was agreed that a sale of the residence lot would not
be negotiated with the hospital at the list price, unless
his adjoining property had then been sold and that
no, sale to any purchaser, of either parcel, would be
contracted for by the agents without his consent; that
all the parties knew he was unwilling to sell the property
to the hospital at the price named, and conspired to
deceive him by securing D. A. Payne as a purchaser in
his own name when he was in fact buying the property
for the hospital; that his wife was not a party to the
listing contract and refused to confirm the contract
of sale; and that the contract of sale to D. A. Payne
constitutes a cloud upon his title.

The prayer of the bill is that the contract of April
26, 1922, between D. A. Payne and the complainant,
by his agents, be annulled, cancelled and delivered to
the complainant.

The defendants, D. A. Payne and Memorial Hos-
pital, Inc., filed their answer and cross-bill. They deny
the charge of conspiracy to defraud and allege that
they are *bona fide* purchasers, at all times since said
purchase able, ready and willing to accept and pay for
the property. They further charge that under the act
of the General Assembly of 1922, granting all courts
of record jurisdiction to make binding declarations of
right, they are entitled to have their right, title and
interest in the property fixed and determined by a
decree of the court in the instant case.

The defendant, Walker, Mosby & Calvert, Inc.,

filed its answer denying that their authority to sell the property under the agency contract was in any manner limited by the complainant by any parol instructions or agreements and emphatically denying the charge of conspiracy to defraud the complainant.

The case was heard upon the pleadings and depositions of witnesses, and the court entered the decree complained of, cancelling and annulling the contract of April 16, 1922, and directing that the same be surrendered to the complainant.

The assignments of error involve the following questions:

1. Did the defendants conspire to deceive and defraud the complainant?

2. Was there a contemporaneous parol agreement between the complainant and his agents, and if so, was evidence of it admissible to abrogate or modify the authority given under the written contract of agency? ·

3. Did Walker, Mosby & Calvert, Inc., have authority under the agency contract to execute the contract of sale binding Jennings to convey the property to Payne or the hospital?

4. Were the defendants, Payne and the lodge, entitled to the declaratory decree prayed for in their answer and cross-bill?

[1] A real estate agent is generally a special agent of limited powers, and those dealing with him deal at their peril. Usually his only authority is to secure a purchaser who will take the property at a price fixed by the owner. He cannot, unless expressly or impliedly authorized, execute a contract of sale on behalf of his principal. *Kramer* v. *Blair*, 83 Va. 462, 13 S. E. 258; *Halsey* v. *Monteiro*, 92 Va. 581, 24 S. E. 258; *Davis* v. *Gordon*, 87 Va. 559, 13 S. E. 35.

[2] For authority to execute a contract of sale, binding on his principal, the agent must look to his agency contract. Authority simply to sell the property at a price named, leaving all the details of the transaction to be adjusted by the owner, does not include the power to execute a contract of sale. But where the agency contract empowers the agent to sell the property at a price and upon terms set forth therein, and provides what, if anything, shall be done as to the examination of the title, what covenants the conveyance shall contain, when possession shall be delivered, and leaves no material detail unsettled to be thereafter adjusted between the owner and the vendee, the power to sell implies the power to execute a contract of sale in accordance with the terms of his agency contract, which will bind his principal. *Yerby* v. *Grigsby*, 9 Leigh (36 Va.), 387; *Smith* v. *Tate*, 82 Va. 657.

In *Yerby* v. *Grigsby*, the contention was that the agent had no authority as agent for the owner to execute a contract of sale for the land, that his authority was merely to find a purchaser. The court, at page 390, says: "It has been there (in England) repeatedly settled that an agent authorized by parol to sign a contract for sale is thereunto lawfully authorized within the provisions of the statute (of frauds). The authority to sell implied authority to do everything necessary to complete the sale and make it binding upon the principal. *It is on this principle that an auctioneer empowered to sell has always been held to be the agent* of the vendor empowered to sign. In no one of the cases has it *ever* been *required* that an express authority to sign should be superadded to the authority to sell, although the authority *to sign* is *certainly required* by the statute. It has, in all of them, been taken for granted that an agent authorized to sell land is empowered to do every

act necessary to complete the contract. As the statute declares that no agreement for the sale of land shall be binding, unless it is in writing and signed by the party to be charged therewith or some other person thereunto (that is, to the signing) lawfully authorized, it could not be presumed that he who authorizes another to sell his lands meant to deprive him of the power to render that sale effectual and binding on the vendor. If the agent sells and does not sign a note or memorandum in writing, the vendor has the same *locus penitentiae* as if he himself verbally agrees to sell; for he may revoke the authority of the agent at any time before the agreement is executed according to the statute. So an agent to purchase must have authority to bind the purchaser by signing the agreement, although his authority may be revoked before the contract is reduced to writing and signed." (Italics ours.)

In *Smith* v. *Tate*, 32 Va. 657, 664, the court approved the doctrine laid down in the *Yerby-Grigsby Case*, using the following language: "Being thus constituted agent and authorized to make the sale, he had authority to execute such writing, or enter into such written agreement as might be necessary, for the authority to sell implies an authority to do everything necessary to complete the sale and make it binding. *Yerby* v. *Grigsby*, 9 Leigh (36 Va.), 390, and authorities there cited. In that case, Parker, J., said: 'It is on this principle that an auctioneer empowered to sell has always been held to be the agent of the vendor empowered to sign. In no one of the cases has it ever been required that an express authority to sign should be superadded to the authority to sell.' "

In *Seergy* v. *Norris Realty Corporation*, 138 Va. 572, 579, 121 S. E. 900, 903, Judge Sims, speaking for the

court, said: "This, of course, does not mean that a real estate agent, like any other special agent, may not be authorized by his principal to sign a contract of sale of real estate which will bind the principal, provided the terms of the authority are such that they expressly, or by necessary implication, definitely determine all the matters involved in the performance of the particular contract of sale in question, so that no detail which is essential to the performance of the contract is left by the authority unsettled, to be adjusted by subsequent agreement of the owner with the purchaser."

We find nothing in the authorities relied on by the appellee in conflict with the views we have expressed herein.

[3] It is a rule of construction that the opinion of an appellate court must be construed in the light of the facts in the particular case.

In *Davis* v. *Gordon*, 87 Va. 568, 13 S. E. 35, the owner said "it is for sale," and expressed a desire that the agents would sell it, but no definite price was fixed upon the entire property. The court held that the agency was a special one, that the extent of the agent's authority was in doubt and that the owner was not bound by a sale of the corner lot made without his consent and below the minimum price subsequently fixed by him.

In *Kramer* v. *Blair*, 88 Va. 464, 13 S. E. 916, the court held that there was no agency contract authorizing the agent to sell the property. Judge Lacy says: "In every letter to these agents Kramer said: 'I will take,' or 'I will sell,' or 'I have concluded to sell,' or 'my price is,' and nowhere appointed any agent to sell for him."

In *Halsey* v. *Monteiro*, 92 Va. 583-4, 24 S. E. 258,

259, the agents were only authorized to list the property for twelve months at a certain price, the owner saying he would allow the agents a liberal commission if they could place the farm. The court, speaking through Judge Riely, said: "A sale of real estate involves the adjustment of many matters besides fixing the price. The delivery of the possession has to be settled, generally, the title to be examined and the conveyance with its covenants to be agreed upon and executed by the owner—all of which require conference and time for their completion. They are for the determination of the owner." Under the facts in that case the court held, very properly, that the agents had not been empowered to sign a contract of sale, binding on their principal, and that the sale attempted to be effected "was not in accordance with such authority as was entrusted to them by their principal."

The opinion of the court in *Crews* v. *Sullivan*, 133 Va. 478, 113 S. E. 865, recognizes the doctrine announced in *Smith* v. *Tate*, *supra*, but holds that it has no application in a case where the owner has not named the terms of sale, nor authorized the agent to name them for him.

In *Seergy* v. *Morris*, *supra*, the court approves the doctrine we have announced in the instant case, and holds that a real estate agent, who was authorized by the owner to sell the land at a certain price for cash, subject to all loans and leases, was not authorized to execute a contract binding the owner to sell the property for $250 cash, balance in thirty days, with no provision concerning the loans and leases. Judge Sims says there is nothing in the cases of *Yerby* v. *Grigsby* and *Smith* v. *Tate*, *supra*, in conflict with the conclusions in the *Seergy Case*.

[4] The testimony taken in an effort to establish a

contemporaneous agreement between the agent and his principal by which the agency contract was contradicted, modified or varied has no place in the case and was improperly admitted. The whole contract between the parties is contained within the four corners of the written listing contract, dated February 16, 1922, unaffected by any supposed parol agreement, condition, or understanding.

[5] "No rule of law is better established as a general rule than this—that a written contract, whether under seal or not, cannot be explained, varied or contradicted by parol evidence." *Phelps* v. *Seely,* 22 Gratt. (63 Va.) 573, 585.

In *Marlin* v. *Lewis,* 30 Gratt. (71 Va.) 585, 32 Am. Rep. 682, the court says: "The general principle that evidence of a contemporaneous parol agreement is not admissible to vary or contradict a written instrument, is so familiar and well established as not to require any citation of authority. It is a principle which has now become one of the axioms of jurisprudence, and is of the last importance in the administration of justice. Without this general principle there would be no certainty in written agreements, and no security in the most formal contracts and the most specific transactions among men. It ought not to be weakened or frittered away by nice distinctions and ingenious exceptions, to meet hardships, real or supposed, or particular cases. Where the parties have reduced their agreement to writing, that agreement cannot be overthrown by evidence of a parol agreement proved by interested witnesses, or dependent for its establishment upon the slippery memory of men."

[6] The charge of conspiracy to defraud contained in the bill is not sustained by the evidence. Jennings had agreed in writing to convey the property with good

title, by general warranty deed, to "any person designated by" the agents.   Under these circumstances, the failure of the agents to reveal the name of the purchaser to the owner before he was called upon to sign the contract of sale, or the fact that the contract of sale was entered into with Payne who would later convey the property to the hospital, did not constitute bad faith on the part of the agent, nor work a fraud on the rights of his principal.

[7] Since the terms of the agency contract left for the future determination of the owner the date of delivery of the possession of the property, which was a material detail in the execution of the contract of sale, we are of the opinion that the agent was not authorized to enter into the contract of sale with D. A. Payne in the name of his principal, and that the principal is not bound thereby.

Nothing we have said is intended to prejudice any of the rights of the agents or their principal in any controversy which may arise between them, which are not in issue and have not been considered in this opinion.

For the reasons stated, the decree will be affirmed.

*Affirmed.*