# Wytheville.

GREGORY VOYENTZIE, ET AL. V. E. S. RYAN, ET AL.

June 12, 1930.

Absent Campbell and Holt, JJ.

The opinion states the case.

*R. T. Wilson*, for the appellants.

*Heflin, Woody & Adams* and *Archer L. Jones*, for the appellees.

HUDGINS, J., delivered the opinion of the court.

The case is as follows: Two non-residents, Gregory Voyentzie, living in New Jersey, and Anthony Voyentzie, living in Durham, N. C., each owned a one-third undivided interest in lot No. 15, in Block No. 4, West City Point subdivision of the city of Hopewell. On December 11, 1926, the following card, addressed to a real estate broker in the city of Hopewell, was signed by Gregory Voyentzie, for himself and for Anthony Voyentzie. The wording of the card and the signatures as they appear thereon are as follows:

"HOPEWELL, VIRGINIA.

"To M. T. BROYHILL Co., INC.

"HOPEWELL VIRGINIA.

"I hereby list with you for sale, the real estate described on the reverse side hereof, at price and on terms as therein stated and agree to pay you for selling cash commission on sale price at the rate of (5) five per cent if said property is sold by you either directly or indirectly.

"I further agree to notify you of the withdrawal of said property from sale, or of prior sale.

"Given under my hand and seal this 11th day of December, 1926.

"(Signed) ANTHONY VOYENTZIE,

"(Signed) GREGORY VOYENTZIE,

"(Seal)

"Per Gregory Voyentzie.

"61 REIPEN AVE.

"JERSEY CITY, N. J."

On the reverse side of the above card was additional writing which is set out in a foot note.[1]

The following letters passed between the real estate broker and Gregory Voyentzie:

"February 11, 1927:

"MR. GREGORY VOYENTZIE,

"61 REIPIN AVE.,

"JERSEY CITY, N. J.

"DEAR SIR:

"We enclose contract covering your two-thirds interest in lot No. 15, Block 4, West City Point subdivision, as per your agreement signed in our office on December 11, 1926.

"Kindly sign one copy and return to this office as soon as possible.

"Yours very truly,

"M. T. BROYHILL CO., INC.,

"By_____."

The contract referred to is as follows:

"This agreement of sale made in triplicate this 10th day of February, 1927, between E. S. Ryan (hereinafter known as the Vendee) and Gregory Voyentzie and Anthony Voyentzie (hereinafter known as the

---

' "DESCRIPTION OF PROPERTY AND TERMS.

Location Lot 15, Block 4 West City Point.
Description of Land Cor Broadway 30' on Broadway 121' Dup. St. 72' on alley & 110' on West.
Description of Improvements Double frame store Bldg.
Party Brick 2 story wall on west or that is brick wall is on property.
Rooms—1st Floor .......
Rooms—2nd Floor .......
Heat Stove Lights Elec.
Plumbing Yes Basement No.
Roof Comp.   Garage Yes.
Condition Fair   Taxes 130 for all
Rents 60 cor 20 inside Leased to—About 10 mos.
Price $8,000.00 ⅔ interest Terms $2,000.00 cash, bal. 1-2-3-yrs. with 6% int.
Present Mortgages No. ......
Remarks.................."

Vendor) and M. T. Broyhill Company, Incorporated, hereinafter known as the agent).

"Witnesseth: That for and in consideration of the sum of One Hundred ($100.00) Dollars, by check, cash in hand paid, receipt of which is hereby acknowledged, the vendee agrees to buy and the vendor agrees to sell for the sum of eight thousand ($8,000.00) dollars all that certain piece, parcel or lot of land described as follows, to-wit:

"Two-thirds interest, in Lot 15, Block 4, West City Point.

"The purchase price to be paid as follows:

"Two thousand dollars ($2,000.00) cash and the balance in one (1), two (2), and three (3) years, with six per cent (6%) interest.

"The Vendor agrees to convey the above property with a general warranty deed with the usual covenants of title, same to be prepared at the expense of the vendor.

"All taxes, insurance, rents and interest are to be pro-rated as of date of settlement and settlement is to be made at the above agent's office, on or before February 21, 1927, or as soon thereafter as title can be examined and papers prepared, allowing a reasonable time to correct any defects reported by the title examiner.

"It is understood that the title is to be free from and clear of all liens and indebtedness of every kind except the liens above mentioned.

"It is understood that the property is to be conveyed subject to any restrictions now thereon.

"The vendor agrees to pay to the agent cash for his services a commission on the sale price of the property at the following rate:

"Five per cent (5%).

"Witness the following signatures and seals made this 11th day of February, 1927.

    "(Signed) E. S. RYAN  (Seal)
    "(Signed M. T. Broyhill Co., Inc.)
      "By M. T. BROYHILL, Agt."

     "JERSEY CITY, February 16, 1927.
"M. T. BROYHILL CO., INC.,
  HOPEWELL, VA.
"DEAR SIR:

"I have received the contract in regard to the property owned by me and Anthony Voyentzie. Inasmuch as the terms of the contract do not conform with the terms of our agreement I decided to reject your offer and withdraw our agreement entirely.

    "Yours very truly,
     "(Signed) GREGORY VOYENTZIE."

On the refusal of Gregory Voyentzie to make the sale of the two-thirds interest in the lot described in the contract, suit for specific performance of the contract was instituted by E. S. Ryan against both the Voyentzies.

The trial court entered its decree holding (1) that Gregory Voyentzie had no authority to sign the contract for Anthony Voyentzie; (2) that E. S. Ryan was entitled to specific performance for the one-third interest in the lot owned by Gregory Voyentzie; and (3) that Gregory Voyentzie "impliedly warranted to E. S. Ryan that he was the agent of Anthony Voyentzie," and for breach of this "implied warranty" he was liable in damages to E. S. Ryan.

It is conceded that the rights of the parties hinge on the proper construction to be placed on the wording of the card signed by Gregory Voyentzie, wherein the real estate broker received all of his authority for making the contract of sale of the lot.

The appellants contend that the only authority

therein contained was for the broker to find a purchaser ready, willing and able to buy upon the terms fixed by the owner. The appellees, on the other hand contend that the wording of the card gave to the broker not only authority to find a purchaser ready, willing and able to buy on terms fixed by the owner, but that it gave the additional authority for the broker to sign the contract with such a purchaser for, in behalf of and binding on the owners. In support of this contention the appellees rely on three Virginia cases to-wit: *Yerby* v. *Grigsby*, 9 Leigh (36 Va.), 387; *Smith* v. *Tate*, 82 Va., 657; and *Seergy* v. *Morris Realty Corporation*, 138 Va., 572, 579, 121 S. E. 900, 902.

In the case of *Yerby* v. *Grigsby, supra*, the court held that a landowner may by parol give his agent authority to execute a contract for the sale of real estate. It appears that in that case the agent not only complied strictly with the authority given him by the owner, but after the contract was signed the owner ratified his acts, as is seen from the following language: "Further, after the contract was signed, Charles Green was told by Chapmen S. Green that his agent had sold the land to Grigsby, and Charles said he was satisfied, and glad he had sold it. Here was a ratification of John Green's act."

The controversy in the case of *Smith* v. *Tate, supra*, was between the agent and the landowner for compensation the agent claimed was due. The agent contended that the owner had by his failure to perform his part of the contract prevented the agent from consummating a sale of the land. The case turned on a question of fact, namely, that the agent had failed to prove he had complied with the terms of his contract of employment which was a condition precedent for him to recover.

The only other case relied on by the appellees is

*Seergy* v. *Morris Realty Corporation, supra.* There the controversy, like the one under review, was between the purchaser from the real estate agent and the landowner, wherein the purchaser was seeking to obtain the land by a suit for specific performance of the contract signed by the agent for the owner. Judge Sims, speaking for the court, said: "The contract of sale signed by the agent, involved in the instant case, did not strictly pursue the authority of the agent contained in the letter in question, but departed therefrom certainly in two material particulars. The letter stipulated that the terms of sale should be $16,000.00, to be paid all cash; and that the sale should be made at that price, subject to all loans and leases. By the contract of sale, with the exception of the payment of $250.00, the appellant purchaser was given thirty days time within which to pay the purchase money, and there was no provision in the contract of sale that the sale was made subject to all loans and leases. Hence, the sale not having been made by the special agent strictly in accordance with his authority, we must hold, under the established rule above mentioned, that the owner was not bound by the contract of sale."

The Virginia cases cited both by the appellants and the appellees establish the rule that a real estate agent is generally a special agent, with limited powers, whose usual duty is simply to find a purchaser ready, able and willing to enter into a contract upon the terms and conditions fixed by the owner, and that he has no authority to bind the owner unless he has expressly or by clear necessary implication authorized him so to do. *Payne* v. *Jennings*, 144 Va., 126, 131 S. E. 209, 48 A. L. R. 628; *Seergy* v. *Morris Realty Corporation, supra; Kramer* v. *Blair*, 88 Va., 464, 13 S. E. 914, 916;

*Halsey* v. *Monteiro*, 92 Va., 581, 24 S. E. 258; *Davis* v. *Gordon*, 87 Va., 559, 13 S. E. 35.

Applying this rule to the language used by the landowner engaging the services of the real estate agent in the case at bar, we find that there is no express authority given the agent to sign a contract for the owner.

The next point of inquiry is does the language used clearly imply such authority? The language of the first sentence is, "I hereby list with you for sale."

It seems to be well established that the mere listing of land does not authorize the agent to enter into a contract with the purchaser in the name of the owner. See *Halsey* v. *Monteiro*, 92 Va., 581, 584, 24 S. E. 258, 259. In that case the language engaging the real estate agent was as follows: "You may list it for twelve months next on the following terms * * * I will allow you a liberal commission if you can place the farm." Judge Riely, in holding that such language did not give to the agent authority to sign a contract for the owner, said: "No power whatever is conferred upon them (the agents) to sign a contract of sale. There is not a suggestion of such authority."

It is urged that the additional words used in the listing card, "and agree to pay you for selling," should be construed to give the power to the agent to sign the contract in behalf of the owner. With this contention we cannot agree. It was incumbent upon the parties to use some appropriate language to bind the owner to pay the agent if the agent found a purchaser who would buy upon terms and conditions acceptable to him. This construction is strengthened by the fact that the agency contract clearly indicated that the owner reserved the right at any time to take the property off the market or sell it himself or through another agent.

■ See 9 C. J. 528, also 4 R. C. L. 262, where the author states: "* * * that the employment of a real estate broker, as such, or the mere listing of property with him, or the direct instruction to find a purchaser, or any communication from the owner to the broker with respect to the sale of land, will be regarded as giving the agent only the authority to find a purchaser; and that no wider power than that is necessarily indicated by the words 'to sell' or 'to make a sale,' it being a matter of common understanding that even though one uses such terms in soliciting the services of a real estate broker, nevertheless he reserves to himself the power to conclude the sale, unless there is an express provision to the contrary. The mere fact that the owner specifies the terms upon which he is willing to dispose of the property, or that he gives the broker the exclusive right to sell, does not alter the application of the rule, * * *."

■ There is another reason in the instant case which is fatal to a suit for specific performance, namely, variance between the terms fixed by the owner and the contract made by the agent. The owner specified that the terms of sale should be "$2,000.00 cash, balance one, two and three years with six per cent interest." The terms fixed by the agent with E. S. Ryan are, settlement is to be made at the above agent's office, on or before February 21, 1927, or as soon thereafter as title can be examined and papers prepared, allowing a reasonable time to correct any defects reported by the title examiner." The payment of $100.00 when the contract is signed, the balance of the cash payment of $2,000.00 and interest to begin on deferred payments when examination of the title is completed, and if such examination shows a defect in title then settlement is to be delayed until such defect is cured. This is not a

strict compliance with the terms of payment fixed by the contract of agency. Other details not covered by the contract with E. S. Ryan are, the date possession of the lot was to be given, and the rights of the lessee to be safeguarded.

In deciding the case before us we have not alluded to the question as to the right of the real estate broker to recover of the owner his compensation, as that question is not involved.

For the reasons herein given, the decree of the lower court is reversed and an order will be entered dismissing the suit.

*Reversed.*